[No. 25414-3-III.   Division Three.   September 29, 2011.]

THE STATE OF WASHINGTON, *Respondent*, v. EVAN D. SAVOIE, *Appellant*.

*Eric J. Nielsen, Eric Broman,* and *David B. Koch* (of *Nielsen, Broman & Koch PLLC*), for appellant.

*D. Angus Lee, Prosecuting Attorney,* and *Edward A. Owens, Deputy,* for respondent.

¶1 BROWN, J. — Evan Savoie appeals his Grant County adult-court first degree murder conviction stemming from Craig Sorger's homicide when they were respectively 12 and 13 years old. He mainly contends the court violated his right to a public trial and erred in appointing counsel for the victim's parents. We agree and reverse. Because we reverse, and because the parties agree Mr. Savoie is now an adult, we do not reach his decline-hearing and evidence-ruling contentions.

## Background

¶2 On Saturday, February 15, 2003, Mr. Savoie's mother, Holly Parent, and Jake Eakin's mother, Tammy Vickery, arranged a visit and sleepover for their sons. Around 3:00 p.m., Ms. Parent drove the boys to nearby Oasis Park and dropped them off. Mr. Savoie and Mr. Eakin went to Mr. Sorger's nearby home to get Mr. Sorger. Mr. Sorger was one grade ahead of Mr. Savoie. He suffered from attention deficit hyperactivity disorder, was physically and mentally delayed, and had the maturity level of an eight-year-old child. Mr. Sorger's mother, Lisa, soon became concerned when Mr. Sorger did not return. Not long after, Mr. Sorger was found in the park, dead. In light of the limited appeal issues, the detailed facts of the death investigation and the juvenile jurisdiction decline process are not recited.

¶3 Generally, Mr. Savoie told police the three boys had played football and tackle tag, and Mr. Sorger hit his head when tackled and then left to go home. Mr. Savoie's and Mr. Eakin's statements began to multiply and diverge, becoming convoluted and incriminating. The autopsy revealed Mr. Sorger died from homicidal violence. The State charged Mr. Savoie and Mr. Eakin with first degree murder. The State successfully moved to transfer the boys from juvenile to adult court.

## The Sorgers' Appointed Counsel—Court Closure

¶4 Early on, defense counsel theorized someone else killed Mr. Sorger, possibly a Sorger family member, and

requested mental health and Child Protective Services records relating to the Sorger family. The Department of Social and Health Services opposed unrestricted disclosure. The court ordered an in camera review to determine relevance. The court decided to release a portion of the Sorgers' record, but the prosecutor's office mistakenly provided all of the requested records to the defense.

¶5 The Grant County Prosecutor's Office decided that "the Sorgers needed somebody to come in and vindicate their rights." Report of Proceedings (RP) (June 2, 2006) at 33. The State moved to appoint counsel for the Sorgers under RCW 7.69.030 (addressing survivors' rights in criminal proceedings). Prosecutors proposed the order signed by the court. It partly states, "With respect to the victims and survivors of victims, the court finds that appointed counsel is necessary to protect their rights in this action." Clerk's Papers (CP) at 397. Nothing indicates defense counsel's presence, although blank signature lines are on the document. Attorney Garth Dano was appointed.

¶6 The trial court indicated Mr. Dano would not be heard in the criminal matter; he would have to institute a separate proceeding. But Mr. Dano did appear in the criminal case multiple times attempting to stop further distribution of the family records and seeking return of the records. Mr. Dano sought exemption from any rule prohibiting the Sorger family from attending the trial until they had completed their testimony. The defense repeatedly objected to Mr. Dano's participation in the proceedings, arguing the Sorgers were not parties to the action and had no standing to present argument through an appointed attorney, and the court lacked authority for Mr. Dano's appointment. After overruling several objections, the court indicated no more objections were necessary to preserve the issue for appeal.

¶7 At one hearing, over Mr. Savoie's strenuous objection, Mr. Dano successfully asked the court to close the courtroom to the general public. The court ordered, "We'd ask everyone to leave the courtroom except parties and the

attorneys." RP (Apr. 6, 2006) at 4. The court permitted Ms. Sorger to remain. Mr. Dano then argued why the court should order immediate return of all records. During this hearing, the prosecutor offered proof concerning two mental health professionals and their dealings with Ms. Sorger. The prosecution asked for, and the court ordered, certain documents related to the offer to be sealed. The court and defense counsel discussed what evidence supported the defense's theory. Mr. Dano successfully convinced the court to prevent further distribution of the records and to seal portions of the court file.

## The Trial

¶8 During the trial, the court asked defense counsel whether certain testimony from Mr. Savoie's stepbrother concerning a knife was necessary. Mr. Savoie contends this exchange amounted to a judicial comment on the evidence. We do not give the details of the exchange because we reverse on other grounds, and this concern is unlikely to reoccur on retrial. Jurors found Mr. Savoie guilty as charged. He was sentenced to 320 months, the top of the standard range. His appeal was stayed in 2008 because of the pending public trial issues in *State v. Momah*, 167 Wn.2d 140, 217 P.3d 321 (2009), *cert. denied*, 131 S. Ct. 160 (2010) and *State v. Strode*, 167 Wn.2d 222, 217 P.3d 310 (2009).

## ANALYSIS

### A. Public Trial

¶9 The issue is whether the trial court violated Mr. Savoie's right to a public trial by closing the courtroom. He contends the court violated his public trial right by closing the courtroom. The State concedes the error but argues reversal is not required.

¶10 The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington

Constitution require a public trial, but that right is not absolute; it is strictly guarded to assure proceedings occur outside the public courtroom in the most unusual circumstances. *Strode*, 167 Wn.2d at 226 (citing *State v. Easterling*, 157 Wn.2d 167, 174-75, 137 P.3d 825 (2006)). "Whether a defendant's constitutional right to a public trial has been violated is a question of law, subject to a de novo review on direct appeal." *Strode*, 167 Wn.2d at 225.

¶11 Our Supreme Court has articulated guidelines every trial court must follow before closing a courtroom to the public. *State v. Bone-Club*, 128 Wn.2d 254, 258-59, 906 P.2d 325 (1995). Those criteria are:

"1. The proponent of closure or sealing must make some showing [of a compelling interest], and where that need is based on a right other than an accused's right to a fair trial, the proponent must show a 'serious and imminent threat' to that right.

"2. Anyone present when the closure motion is made must be given an opportunity to object to the closure.

"3. The proposed method for curtailing open access must be the least restrictive means available for protecting the threatened interests.

"4. The court must weigh the competing interests of the proponent of closure and the public.

"5. The order must be no broader in its application or duration than necessary to serve its purpose."

*Bone-Club*, 128 Wn.2d at 258-59 (alteration in original) (quoting *Allied Daily Newspapers of Wash. v. Eikenberry*, 121 Wn.2d 205, 210-11, 848 P.2d 1258 (1993)). The court did not perform a *Bone-Club* analysis.

¶12 Despite its error concession, the State unpersuasively argues this was a separate action from the criminal action because all events occurred in the criminal cause, not a separate action. The trial court appointed counsel for the Sorgers to "protect their rights in this action." CP at 397. Every time counsel appeared on behalf of the Sorgers, it

was in a hearing scheduled under the criminal case title and cause number. Documents filed on behalf of the Sorgers were filed in the criminal case. The closed hearing pertained to the criminal prosecution and involved the use of the records by the defense, the defense's trial strategy, the defense's witnesses, and the timing of the Sorgers' testimony.

¶13 In *Strode*, our Supreme Court held that when a *Bone-Club* analysis is not conducted prior to courtroom closure, prejudice is presumed (i.e., structural error that cannot be considered harmless) and automatic reversal is mandatory. *Strode*, 167 Wn.2d at 231. Our analysis would end here except for *Momah*, where our Supreme Court reasoned all courtroom closures do not trigger a conclusive presumption of prejudice warranting automatic reversal of convictions. *Momah*, 167 Wn.2d at 156. The *Momah* court applied the United States Supreme Court's decision in *Waller v. Georgia*, 467 U.S. 39, 104 S. Ct. 2210, 81 L. Ed. 2d 31 (1984), reading that case to require "a showing that the defendant's case was actually rendered unfair by the closure." *Momah*, 167 Wn.2d at 150. "[T]he trial judge closed the courtroom to safeguard [Mr.] Momah's constitutional right to a fair trial by an impartial jury, not to protect any other interests." *Id.* at 151-52. Mr. Momah assented to closure, argued to expand it, and benefited by it, while here, Mr. Savoie repeatedly objected to participation by the Sorgers' counsel and specifically objected to the closure of the courtroom.

¶14 In sum, the closure was intended to protect the Sorgers' interest, not Mr. Savoie's interests, and he strenuously objected. Accordingly, the closure violated Mr. Savoie's right to a public trial. The remedy is reversal for a new trial.

## B. Appointed Counsel for Family of Victim

¶15 Mr. Savoie contends he suffered harm from the Sorgers' intervention because it was their counsel's motion

that resulted in a violation of his constitutional right to a public trial. As previously stated, we reverse Mr. Savoie's conviction based on the public trial violation instigated in part by appointed counsel for the victim's family.

¶16 The Grant County Prosecutor's Office cited RCW 7.69.030 as authority for appointment of private counsel. The statute provides a list of rights to "victims, survivors, and witnesses." RCW 7.69.030. The list includes 15 separate rights, but the list does not include provision for appointment of private counsel for the victim or the victim's family or allowing the victim or the victim's survivors to intervene in a criminal case. We are unaware of any inherent authority to do so, even in a civil context. *In re Marriage of King*, 162 Wn.2d 378, 174 P.3d 659 (2007). Because we cannot say this problem will not reoccur on retrial, we hold it was error for the trial court to appoint private counsel at public expense and allow intervention in this criminal case.

## C. Decline Hearing and Judicial Comment Contentions

¶17 At argument, the parties correctly agreed that we need not reach Mr. Savoie's decline concerns should we reverse based on the public trial issue. Mr. Savoie is now an adult. Further, because retrial is necessary, we find it unnecessary to analyze whether the trial court erred in making an impermissible comment on the evidence when asking defense counsel whether his line of questioning was relevant. This alleged problem is unlikely to reoccur at trial, and we do not give advisory opinions.

¶18 Reversed.

KORSMO, A.C.J., and SWEENEY, J., concur.