FILED
COURT OF APPEALS
DIVISION II

2014 MAY 20 AM 10: 56

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 45337-1-II |
| Appellant, | |
| v. | |
| A.W., | |
| Appellant, | |
| DWIGHT A. FINCH, | PUBLISHED OPINION |
| Intervenor-Respondent. | |

WORSWICK, C.J. — In this interlocutory appeal, which is linked with *State v. Dwight A. Finch*, No. 44637-5-II (Wash. May 20, 2014), the juvenile court ordered a juvenile sex crime victim and offender to submit to polygraph testing.[1] A.W.,[2] a minor,[3] pleaded guilty to first degree child molestation and received a special sex offender disposition alternative (SSODA).[4] During treatment, A.W. disclosed that Dwight Finch had sexually assaulted him. The State charged Finch with first degree child rape and first degree child molestation, and the superior court, over the State's objection, ordered A.W. to submit to the polygraph test that the parties

---

[1] This case concerns the juvenile court's order. *State v. Finch* concerns the superior court's order.

[2] We use initials to protect A.W.'s privacy. General Order 2011–1 of Division II, *In Re: The Use Of Initials Or Pseudonyms For Child Witnesses In Sex Crime Cases*, (Wash. Ct. App.), *available at* http://www.courts.wa.gov/appellate_trial_courts/.

[3] A.W. was 12 to 13 years old at the time of his offense.

[4] RCW 13.40.162.

dispute on appeal. After we granted discretionary interlocutory review of that decision, Finch moved to intervene in A.W.'s juvenile disposition. Finch requested the juvenile court to order A.W. to take the disputed polygraph test to determine the truthfulness of his allegations against Finch, either by granting Finch's motion to intervene, or on its own motion in the interest of justice. The juvenile court entered the instant order requiring A.W. to submit to the disputed polygraph test.

In this case, the State and A.W. appeal the juvenile court's order requiring A.W. to submit to the polygraph test. The State asks us to impose sanctions against Finch's trial counsel and to remand this case to a different judge. Because A.W.'s SSODA did not authorize the polygraph test, and because Finch had no right to intervene in *State v. A.W.*, we hold that the juvenile court erred by ordering the polygraph test, and we reverse that order. To maintain the appearance of fairness, we remand this case to a different judge. Finally, we remand the matter of sanctions for the juvenile court's consideration.

## FACTS

A. *State v. A.W., with Finch as Intervenor*

A.W. pleaded guilty to first degree child molestation. The juvenile court imposed a special sex offender disposition alternative (SSODA) which imposed conditions including:

[1.] [O]bey all . . . laws.
[2.] Participate in weekly treatment.
[3.] Treatment compliance could be monitored every 6 months through a polygraph, if available.

CP (A.W.) at 18, 22. The juvenile court modified the polygraph test condition from the boilerplate language, which had stated, "Treatment compliance shall be monitored every 6 months through a polygraph." CP (A.W.) at 22.

While undergoing court ordered sex offender treatment, A.W. told his therapist that Finch committed sex acts against him.[5] A.W.'s therapist informed the State about A.W.'s disclosure, and the State charged Finch with first degree child rape[6] and first degree child molestation.[7]

B.     *State v. Finch*

After being charged, Finch submitted to a polygraph test. The polygraph examiner concluded that Finch was truthful when he denied A.W.'s allegations. Finch then moved the superior court to use the juvenile court's authority over A.W.'s SSODA in *State v. A.W.* to require A.W. to submit to polygraph testing, the purpose of which would be to ask A.W. about his allegations against Finch.[8] The State opposed Finch's motion.

The superior court could not clearly remember why it had modified the SSODA's polygraph test provision from the boilerplate language. Because of this, and because the superior court wanted to know why A.W.'s therapist decided against giving A.W. regular polygraph tests, the superior court ordered A.W.'s therapist to appear in *State v. Finch* and show cause as to why he had not given A.W. regular polygraph tests.[9] In response to the superior court's question, A.W.'s therapist provided the following explanation as to why he did not give regular polygraph tests to A.W.:

> [Polygraph tests are] considered coercive for use in adolescents because of their developmental stages, because of their personality formation, because of the

---

[5] Finch was previously convicted of two sex offenses against a female child.

[6] RCW 9A.44.073.

[7] RCW 9A.44.083.

[8] The same judge presided over *State v. Finch* and *State v. A.W.*

[9] A.W. did not appear at this proceeding.

conditions of beneficence and nonmaleficence, which are [sic] either they must
show benefit and [sic] they must show no harm

Verbatim Report of Proceedings (VRP) (Finch) (Nov. 7, 2012) at 7.

[C]hildren believe that [the polygraph tests are] detecting lies when they're really
not. What polygraphs really detect is physiological responses, but they're called
lie detectors, and so the children automatically think they're detecting lies, which
is the coercive part.

VRP (Finch) (Nov. 7, 2012) at 9. A.W.'s therapist also explained:

All these cases—all these decisions are made on a case-by-case basis, and [A.W.]
falls into a category of youth that we would call—that he has sexual behavioral
problems, and because of his developmental maturity, what the literature suggests
is that there can be harm when you coerce a person that age."

VRP (Finch) (Nov. 7, 2012) at 9.

The superior court entered an order in *State v. Finch* requiring A.W. to take the polygraph

test. The State requested discretionary interlocutory review in *State v. Finch*. We stayed the

superior court's order, and granted discretionary interlocutory review because the superior court

committed "probable error that substantially alters the status quo." Ruling Granting Review,

*State v. Finch*, No. 44637-5-II, at 1 (Wash. Ct. App. May 16, 2013); *see* RAP 2.3(b)(2).

C.     *Finch's Intervention in State v. A.W.*

After we stayed and granted discretionary review of the superior court's order in *State v.*

*Finch*, Finch moved to intervene in *State v. A.W.*, asking the juvenile court for another order

requiring A.W. to take the same polygraph test as was ordered in *State v. Finch*.[10] Finch's

---

[10] Finch filed his motion to intervene in the form of a "complaint" against A.W. for A.W.'s
alleged SSODA violation. CP (A.W.) at 35. But Finch's motion was actually a motion to
intervene in *State v. A.W.* Finch also filed a "motion to compel polygraph to review alleged
violation of SSODA sentence," in which he also moved to intervene in *State v. A.W.* CP (A.W.)
at 38.

motion to intervene alleged that by accusing Finch of sex crimes, A.W. committed the crime of false reporting,[11] and, thus, violated the SSODA condition requiring A.W. to "obey all . . . laws." CP (A.W.) at 18. In his motion, Finch requested to intervene in *State v. A.W.* "for [the] very limited purpose [of asking] the Court to require the already ordered polygraph."[12] CP (A.W.) at 35-36. Finch asked the juvenile court to either grant Finch's motion to order A.W. to take the polygraph test, or order the polygraph test on its own motion in the interest of justice.

The juvenile court set a hearing on Finch's motion to intervene. A.W.'s counsel appeared at the hearing and joined the State in opposing the motion. The State filed a declaration stating its refusal to stipulate to the admission of any polygraph tests in *State v. Finch*. The State also requested sanctions against Finch's trial counsel.

At the hearing, the juvenile court stated that it recalled why it had modified the polygraph test provision of A.W.'s SSODA from the boilerplate language:

> I deferred to the treatment provider's . . . discretion, and yet at that time I didn't know that the treatment provider . . . said, "I never give polygraph tests. I'll never give them" . . . [t]o a juvenile. So then I thought, well, if I had known that at the time, then I might have not just signed off on it. . . . It would just be nice for the

---

[11] RCW 9A.84.040.

[12] It is unclear whether Finch meant that the polygraph was (1) already ordered in *State v. Finch* or (2) already ordered as part of the SSODA. Finch argued both below.

Court to know those kind [sic] of things rather than sign an order that that line really has no effect when you say "could."

CP (A.W.) at 260-61.

The juvenile court entered a second order requiring A.W. to take the polygraph test. This order specified that a portion of the polygraph test would ask A.W. about his allegations against Finch, and directed the polygraph test's results to be sent to the juvenile court for in camera review. The State and A.W. requested discretionary interlocutory review of this order. We accepted review and stayed the order in *State v. A.W.* pending further order of this court.[13] Ruling Staying Order, *State v. A.W.*, No. 45337-1-II (Wash. Ct. App. Sept. 12, 2013); Ruling Accelerating Review, *State v. A.W.*, No. 45337-1-II (Wash. Ct. App. Nov. 7, 2013).

ANALYSIS

I. AUTHORITY TO GRANT FINCH'S DISCOVERY REQUEST UNDER A.W.'S SSODA

The State and A.W. argue that A.W.'s SSODA did not authorize the juvenile court to order the polygraph test. We agree with the State and A.W.

A.W.'s SSODA states, "Treatment compliance could be monitored every 6 months through a polygraph, if available." CP (A.W.) at 22. This language limits the scope of potential polygraph tests to questions confirming A.W's compliance with treatment.

Here, A.W.'s therapist explained that he did not give polygraph tests to A.W. because "[polygraph tests are] considered coercive for use in adolescents because of their developmental stages . . . [T]he children automatically think they're detecting lies, which is the coercive part." *See* VRP (Finch) (Nov. 7, 2012) at 7, 9. A.W.'s therapist also said, "[A]ll these decisions are

---

[13] Legal Voice, the National Crime Victim Law Institute, and the Sexual Violence Law Center filed a joint amicus brief in this case.

made on a case-by-case basis, and A.W. falls into a category of youth that we would call—that he has sexual behavioral problems, and because of his developmental maturity, what the literature suggests is that there can be harm when you coerce a person that age." VRP (Finch) (Nov. 7, 2012) at 9. Thus, polygraph tests were not conducive to A.W.'s therapy.

Ordering A.W. to take the polygraph test was designed not to ensure compliance with treatment, but rather to ensure the truthfulness of A.W.'s allegations against Finch. Thus, ordering A.W. to take the polygraph test exceeded the scope of A.W.'s SSODA because it did not pertain to ensuring A.W.'s treatment compliance.

## II. FINCH'S RIGHT TO INTERVENE IN STATE V. A.W.

A.    *Standing To Intervene in State v. A.W.*

The State and A.W. argue that Finch lacked standing to intervene in *State v. A.W.* Finch argues that he had standing because he was a victim of A.W.'s false reporting. We agree with the State and A.W.

Standing is a threshold issue which we review de novo. *State v. Link*, 136 Wn. App. 685, 692, 150 P.3d 610 (2007). Standing is a party's right to make a legal claim or seek judicial enforcement of a duty or right. *Link*, 136 Wn. App. at 692. Standing prohibits a party from asserting another's legal right. *West v. Thurston County.*, 144 Wn. App. 573, 578, 183 P.3d 346 (2008). A litigant may have third party standing if "(1) the litigant has suffered an injury-in-fact, giving him a sufficiently concrete interest in the outcome of the disputed issue; (2) the litigant has a close relationship to the third party; *and* (3) there exists some hindrance to the third party's ability to protect his or her own interests." *Ludwig v. Dep't of Ret. Sys.*, 131 Wn. App. 379, 385, 127 P.3d 781 (2006).

Here, although the juvenile court did not explicitly grant Finch's motion to intervene, it implicitly granted Finch's motion to intervene by granting Finch's requested relief without citing any authority. In *State v. A.W.*, Finch was asserting not his own right, but rather the State's right to move the juvenile court to sanction A.W.'s alleged SSODA violation of false reporting. The issue in *State v. A.W.* was whether A.W. complied with his SSODA. Assuming Finch was a victim of A.W.'s false reporting, Finch still does not have an interest in enforcing A.W.'s compliance with his SSODA. Rather, Finch has an interest in acquittal in *State v. Finch*. Thus, Finch does not have standing because he was asserting the State's legal right, rather than his own.

Finch fails the third party standing test's second part because the litigant (the State) does not have a close relationship to the third party (Finch). Thus, we hold that Finch had no standing in *State v. A.W.*

B.      *Finch's Right To Intervene as a Victim*

The State and A.W. argue that no authority gave Finch the right to intervene in *State v. A.W.* Finch argues that RCW 7.69.030 gives Finch the right to intervene in *State v. A.W.* as a victim of A.W.'s false reporting. We agree with the State and A.W.[14]

We review questions of statutory interpretation de novo. *State v. Christensen*, 153 Wn.2d 186, 194, 102 P.3d 789 (2004). If the statute's meaning is plain on its face, then we give effect

---

[14] Finch also argues that CR 24 authorizes him to intervene in *State v. A.W.* But CR 24 does not apply to matters involving a juvenile offense. JuCR 1.4(a).

to that plain meaning. *State v. Theilken*, 102 Wn.2d 271, 275, 684 P.2d 709 (1984). We discern a statute's plain meaning from "the ordinary meaning of the language at issue, as well as from the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole." *State v. Jacobs*, 154 Wn.2d 596, 600, 115 P.3d 281 (2005).

"[T]he power to prosecute criminal acts is vested in public prosecutors." *Protect the Peninsula's Future v. City of Port Angeles*, 175 Wn. App. 201, 213, 304 P.3d 914 , *review denied*, 178 Wn.2d 1022 (2013). Private parties have no right to intervene in criminal proceedings unless specific authority grants them that right. *See State v. Cloud*, 95 Wn. App. 606, 614, 976 P.2d 649 (1999). Although these cases deal with criminal proceedings rather than juvenile dispositions, the logic of these cases applies equally in the context of juvenile dispositions.

RCW 7.69.030 gives "victims, survivors, and witnesses" 15 enumerated rights. Three of these rights allow for narrow participation in criminal trials, including the right to submit a victim impact statement to the court, present a statement at sentencing hearings for felonies, and have the court enter an order of restitution in felony cases. RCW 7.69.030(13)–(15). But RCW 7.69.030 does not include a right to intervene in a criminal trial.[15] *State v. Savoie*, 164 Wn. App.

---

[15] Finch argues that Division Three of this court found no error with the trial court's decision to allow the victims to intervene. But Finch is mistaken; this court in *State v. Savoie* clearly held the trial court's decision allowing victim intervention to be erroneous. 164 Wn. App. 156, 163, 262 P.3d 535 (2011).

156, 163, 262 P.3d 535 (2011). Thus, the juvenile court erred by allowing Finch to intervene in A.W.'s juvenile disposition because no authority gave Finch the right to do so.[16]

### III. APPEARANCE OF FAIRNESS DOCTRINE

The State argues that we should remand this case to a different judge under the appearance of fairness doctrine. We agree.

A judicial proceeding satisfies the appearance of fairness doctrine if a reasonably prudent and disinterested person would conclude that all parties obtained a fair, impartial, and neutral hearing. *State v. Bilal*, 77 Wn. App. 720, 722, 893 P.2d 674, 675 (1995). We analyze whether a judge's impartiality might reasonably be questioned under an objective test that assumes a reasonable person to know and understand all relevant facts. *Sherman v. State*, 128 Wn.2d 164, 205-06, 905 P.2d 355 (1995). The party must produce sufficient evidence demonstrating actual or potential bias, such as personal or pecuniary interest on the part of the judge; mere speculation

---

[16] We note that allowing a defendant accused of sexual abuse of a juvenile sex offender to intervene in that juvenile's disposition for the purpose of using that juvenile's SSODA against that juvenile would hinder the SSODA's rehabilitative purpose. This is a serious public policy concern for two reasons. First, juveniles who have been sexually or physically abused are more likely to be arrested for sex crimes than the general population. Cathy Spatz Widom, *Victims of Childhood Sexual Abuse—Later Criminal Consequences*, NAT'L INST. OF JUST. 1, 5 (1995), *available at* https://ncjrs.gov/pdffiles/abuse.pdf. This subset of juvenile offenders needs to be able to fully participate in treatment which includes a recitation of their sexual history. Second, juvenile sex offenders are more amenable to treatment than their adult counterparts. EILEEN P. RYAN ET AL., JUVENILE SEX OFFENDERS: A GUIDE TO EVALUATION AND TREATMENT FOR MENTAL HEALTH PROFESSIONALS 15 (Oxford Univ. Press 2012). Thus, it is critical to treat the juvenile sex offenders, who themselves may be victims of sexual abuse, before they reach adulthood. Allowing the juvenile's abuser to intervene in treatment would have a chilling effect on these youth who might otherwise be inclined to enter treatment. But we need not consider this serious public policy concern here, because Finch had no right to intervene in A.W.'s juvenile disposition.

is not enough. *In re Pers. Restraint of Haynes*, 100 Wn. App. 366, 377 n.23, 996 P.2d 637 (2000).

Here, the judge used his juvenile court authority over A.W.'s SSODA in *State v. A.W.* to order a polygraph test to investigate A.W.'s allegations in *State v. Finch*. If *State v. Finch* proceeds to trial, A.W. would have to appear to testify before this same judge who improperly allowed Finch to intervene in A.W's juvenile disposition, and who ordered A.W to take a polygraph test without proper authority. A reasonably prudent and disinterested person who knew these facts would conclude that the judge ordering A.W. to take a polygraph to investigate the case in which A.W. is the victim, in spite of a therapist's testimony that polygraph tests could be harmful to A.W., could not give all parties a fair, impartial, and neutral hearing.

We hold that the judge's dual role as judge for A.W.'s juvenile disposition and Finch's criminal case, the judge's inability to separate these two roles, and the judge's attempts to investigate the truth of A.W.'s allegations in *State v. Finch*, combine such that a reasonably prudent and disinterested person who knew these facts would question whether the judge could act fairly in presiding over *State v. A.W.* Thus, we remand *State v. A.W.* to a different judge to maintain the appearance of fairness.

## IV. SANCTIONS

A.  *Extending* State v. Howard *To Impose Sanctions Against Finch*

The State argues that we should extend *State v. Howard* to require Finch's trial counsel to pay for A.W.'s indigent defense counsel here, because Finch's motion to intervene initiated a prosecution of A.W. 106 Wn.2d 39, 43, 44, 722 P.2d 783 (1985). We disagree.

No. 45337-1-II

In *Howard*, our Supreme Court held that under RCW 43.135.060, which prohibits shifting costs from the State government to local government, the State could not require local governments to pay for the indigent defense counsel of defendants prosecuted by the State Attorney General. 106 Wn.2d at 43-44. Here, Finch, a private individual, filed a motion to instigate a prosecutorial action that the juvenile court erroneously considered. This case does not involve RCW 43.135.060, on which *Howard* turns, because it does not involve cost-shifting between governments. Thus, we hold that *Howard* does not apply here.

B.    *CR 11 Sanctions*

Finally, the State argues that we should order CR 11 sanctions against Finch's trial counsel for filing a motion to intervene in *State v. A.W.* The State argues that the filing was baseless, because existing law does not support it, and that it was filed for the improper purpose of coercing A.W. so as to deter him from cooperating in the State's prosecution of Finch. We remand this matter to the juvenile court.

We review lower court CR 11 sanction decisions, but we do not impose CR 11 sanctions. *Bldg. Indust. Ass'n of Washington v. McCarthy*, 152 Wn. App. 720, 750, 218 P.3d 196 (2009). Here, the State requested CR 11 sanctions below, but the record contains no decision on the State's motion. Thus, we remand the matter of CR 11 sanctions to the juvenile court. *See McCarthy*, 152 Wn. App. at 750.

We reverse the polygraph order because the SSODA did not provide the juvenile court with authority to order A.W. to take a polygraph test, and because the juvenile court erred by allowing Finch to intervene. We remand this case, including the State's request for CR 11

No. 45337-1-II

sanctions, to a different judge. In light of this conclusion, it is unnecessary for us to consider

A.W.'s and the State's remaining arguments.

Worswick, C.J.

We concur:

Johanson, J.

Lee, J.

13