FILED
COURT OF APPEALS
DIVISION II

2014 MAY 20 AM 10: 55

STATE OF WASHINGTON
BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 44637-5-II |
| Petitioner, | |
| v. | |
| DWIGHT A. FINCH, | PUBLISHED OPINION |
| Respondent. | |

WORSWICK, C.J. — In this interlocutory appeal, which is linked with *State v. A.W.*, No. 45337-1-II (Wash. May 20, 2014), the superior court ordered a juvenile to submit to polygraph testing.[1] A.W.,[2] a minor,[3] pleaded guilty to first degree child molestation and received a special sex offender disposition alternative (SSODA).[4] During treatment, A.W. disclosed that Dwight Finch had sexually assaulted him. The State charged Finch with first degree child rape and first degree child molestation, and the superior court, over the State's objection, ordered A.W. to submit to the polygraph test that the parties dispute on appeal. After we granted discretionary interlocutory review of that decision, Finch moved to intervene in A.W.'s juvenile disposition. Finch requested the juvenile court to order A.W. to take the disputed polygraph test to determine

---

[1] This case concerns the superior court's order. *State v. A.W.* concerns the juvenile court's order.

[2] We use initials to protect A.W.'s privacy. General Order 2011–1 of Division II, *In Re: The Use Of Initials Or Pseudonyms For Child Witnesses In Sex Crime Cases*, (Wash. Ct. App.), *available at* http://www.courts.wa.gov/appellate_trial_courts/.

[3] A.W. was 12 to 13 years old at the time of his offense.

[4] RCW 13.40.162.

the truthfulness of his allegations against Finch, either by granting Finch's motion to intervene, or on its own motion in the interest of justice. The juvenile court entered an order requiring A.W. to submit to the disputed polygraph test.

In this case, the State appeals the superior court order requiring A.W. to submit to the polygraph test ordered for the purposes of ascertaining the truthfulness of A.W.'s allegations against Finch. Additionally, the State asks us to remand this case to a different judge. Because the superior court exceeded its authority by ordering the disputed polygraph test, we hold that the superior court abused its discretion, and we reverse the polygraph order. To maintain the appearance of fairness, we remand this case to a different judge.

## FACTS

A.    *State v. A.W., with Finch as Intervenor*

A.W. pleaded guilty to first degree child molestation. The juvenile court imposed a SSODA that imposed conditions including:

> [1.]  [O]bey all . . . laws.
> [2.]  Participate in weekly treatment.
> [3.]  Treatment compliance could be monitored every 6 months through a polygraph, if available.

CP (A.W.) at 18, 22. The juvenile court modified the polygraph test condition from the boilerplate language, which had stated, "Treatment compliance shall be monitored every 6 months through a polygraph." CP (A.W.) at 22.

While undergoing court ordered sex offender treatment, A.W. told his therapist that Finch committed sex acts against him.[5] A.W.'s therapist informed the State about A.W.'s disclosure, and the State charged Finch with first degree child rape[6] and first degree child molestation.[7]

B.     *State v. Finch*

After being charged, Finch submitted to a polygraph test. The polygraph examiner concluded that Finch was truthful when he denied A.W.'s allegations. Finch then moved the superior court to use the juvenile court's authority over A.W.'s SSODA in *State v. A.W.* to require A.W. to submit to polygraph testing, the purpose of which would be to ask A.W. about his allegations against Finch.[8] The State opposed Finch's motion.

The superior court could not clearly remember why it had modified the SSODA's polygraph test provision from the boilerplate language. Because of this, and because the superior court wanted to know why A.W.'s therapist decided against giving A.W. regular polygraph tests, the superior court ordered A.W.'s therapist to appear in *State v. Finch* and show cause as to why he had not given A.W. regular polygraph tests.[9] CP (Finch) at 33. In response to the superior court's question, A.W.'s therapist provided the following explanation as to why he did not give regular polygraph tests to A.W.:

---

[5] Finch was previously convicted of two sex offenses against a female child.

[6] RCW 9A.44.073.

[7] RCW 9A.44.083.

[8] The same judge presided over *State v. Finch* and *State v. A.W.*

[9] A.W. did not appear at this proceeding.

> [Polygraph tests are] considered coercive for use in adolescents because of their developmental stages, because of their personality formation, because of the conditions of beneficence and nonmaleficence, which are [sic] either they must show benefit and [sic] they must show no harm.

Verbatim Report of Proceedings (VRP) (Finch) (Nov. 7, 2012) at 7.

> [C]hildren believe that [the polygraph tests are] detecting lies when they're really not. What polygraphs really detect is physiological responses, but they're called lie detectors, and so the children automatically think they're detecting lies, which is the coercive part.

VRP (Finch) (Nov. 7, 2012) at 9. A.W.'s therapist also explained:

> All these cases—all these decisions are made on a case-by-case basis, and [A.W.] falls into a category of youth that we would call—that he has sexual behavioral problems, and because of his developmental maturity, what the literature suggests is that there can be harm when you coerce a person that age.

VRP (Finch) (Nov. 7, 2012) at 9.

The superior court entered an order in *State v. Finch* requiring A.W. to take the polygraph test. The State requested discretionary interlocutory review in *State v. Finch*. We stayed the superior court's order, and granted discretionary interlocutory review because the superior court committed "probable error that substantially alters the status quo." Ruling Granting Review, *State v. Finch*, No. 44637-5-II, at 1 (Wash. Ct. App. May 16, 2013); *see* RAP 2.3(b)(2).

C.     *Finch's Intervention in State v. A.W.*

After we stayed and granted discretionary review of the superior court's order in *State v. Finch*, Finch moved to intervene in *State v. A.W.*, asking the juvenile court for another order

requiring A.W. to take the same polygraph test as was ordered in *State v. Finch*.[10] Finch's

motion to intervene alleged that by accusing Finch of sex crimes, A.W. committed the crime of

false reporting,[11] and, thus, violated the SSODA condition requiring A.W. to "obey all . . . laws."

CP (A.W.) at 18. In his motion, Finch requested to intervene in *State v. A.W.* "for [the] very

limited purpose [of asking] the Court to require the already ordered polygraph."[12] CP (A.W.) at

35-36. Finch asked the juvenile court to either grant Finch's motion to order A.W. to take the

polygraph test, or order the polygraph test on its own motion in the interest of justice.

The juvenile court set a hearing on Finch's motion to intervene. A.W.'s counsel

appeared at the hearing and joined the State in opposing the motion. The State filed a declaration

stating its refusal to stipulate to the admission of any polygraph tests in *State v. Finch*. The State

also requested sanctions against Finch's trial counsel.

At the hearing, the juvenile court stated that it recalled why it had modified the polygraph

test provision of A.W.'s SSODA from the boilerplate language:

> I deferred to the treatment provider's . . . discretion, and yet at that time I didn't
> know that the treatment provider . . . said, "I never give polygraphs. I'll never
> give them" . . . [t]o a juvenile. So then I thought, well, if I had known that at the
> time, then I might have not just signed off on it. . . . It would just be nice for the

---

[10] Finch filed his motion to intervene in the form of a "complaint" against A.W. for A.W.'s
alleged SSODA violation. CP (A.W.) at 35. But Finch's motion was actually a motion to
intervene in *State v. A.W.* Finch also filed a "motion to compel polygraph to review alleged
violation of SSODA sentence," in which he also moved to intervene in *State v. A.W.* CP (A.W.)
at 38.

[11] RCW 9A.84.040.

[12] It is unclear whether Finch meant that the polygraph was (1) already ordered in *State v. Finch*
or (2) already ordered as part of the SSODA. Finch argued both below.

Court to know those kind [sic] of things rather than sign an order that that line really has no effect when you say "could."

CP (A.W.) at 260-61.

The juvenile court entered a second order requiring A.W. to take the polygraph test. This order specified that a portion of the polygraph test would ask A.W. about his allegations against Finch, and directed the polygraph test's results to be sent to the juvenile court for in camera review. The State and A.W. requested discretionary interlocutory review of this order. We accepted review and stayed the order in *State v. A.W.* pending further order of this court.[13] Ruling Staying Order, *State v. A.W.*, No. 45337-1-II (Wash. Ct. App. Sept. 12, 2013); Ruling Accelerating Review, *State v. A.W.*, No. 45337-1-II (Wash. Ct. App. Nov. 7, 2013).

## ANALYSIS

### I. AUTHORITY TO GRANT FINCH'S DISCOVERY REQUEST UNDER A.W.'S SSODA

Finch argues that the Superior court had authority to order A.W. to take a polygraph test in this case under A.W's SSODA. The State argues that A.W.'s SSODA did not authorize the superior court to order the polygraph test. Without determining the authority of the superior court here to order compliance in a separate juvenile case, we agree that A.W.'s SSODA did not authorize the superior court to order a polygraph test.

A.W.'s SSODA states, "Treatment compliance could be monitored every 6 months through a polygraph, if available." CP (A.W.) at 22. This language limits the scope of potential polygraph tests to questions confirming A.W's compliance with treatment.

---

[13] The Washington State Department of Commerce filed an amicus brief in this case.

Here, A.W.'s therapist explained that he did not give polygraph tests to A.W. because "[polygraph tests are] considered coercive for use in adolescents because of their developmental stages . . . [T]he children automatically think they're detecting lies, which is the coercive part." *See* VRP (Finch) (Nov. 7, 2012) at 7, 9. A.W.'s therapist also said, "[A]ll these decisions are made on a case-by-case basis, and [A.W.] falls into a category of youth that we would call—that he has sexual behavioral problems, and because of his developmental maturity, what the literature suggests is that there can be harm when you coerce a person that age." VRP (Finch) (Nov. 7, 2012) at 9. Thus, polygraph tests were not conducive to A.W.'s therapy.

Ordering A.W. to take the polygraph test was designed not to ensure compliance with treatment, but rather to ensure the truthfulness of A.W.'s allegations against Finch. Thus, ordering A.W. to take the polygraph test exceeded the scope of A.W.'s SSODA because it did not pertain to ensuring A.W.'s treatment compliance.

## II. AUTHORITY TO GRANT FINCH'S DISCOVERY REQUEST UNDER CrR 4.7

The State argues that the superior court exceeded its authority by granting Finch's request to order A.W. to take the disputed polygraph test. We agree.

The superior court did not identify its authority for granting Finch's polygraph request. Nor could any party at oral argument give us authority for the superior court's decision. Because Finch's request was a motion to compel third party discovery, we analyze the superior court's order under CrR 4.7.

We will not disturb a superior court's discovery decision under CrR 4.7 absent an abuse of discretion. *State v. Garcia-Salgado*, 170 Wn.2d 176, 183, 240 P.3d 153 (2010). A superior court abuses its discretion if its decision is manifestly unreasonable or exercised on untenable

grounds or for untenable reasons. *State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003). A decision is exercised for untenable reasons if the facts do not meet the requirements of the applicable legal standard. *State v. Dye*, 178 Wn.2d 541, 548, 309 P.3d 1192 (2013).

CrR 4.7 governs a superior court's discovery orders. CrR 4.7(d) allows a superior court to subpoena a third party to provide material or information, if it "would be discoverable if in the knowledge, possession or control of the prosecuting attorney." CrR 4.7 lists specific items that the prosecuting attorney must provide in discovery. When the defendant requests an unlisted item, CrR 4.7(e)(1) states:

> Upon a *showing of materiality to the preparation of the defense*, and *if the request is reasonable*, the court in its discretion may require disclosure to the defendant of the relevant material and information not [listed].

(Emphasis added.) A showing of materiality to the preparation of the defense requires the defendant to provide some factual basis making it reasonably likely that the requested evidence would give rise to information material to the defense. *State v. Blackwell*, 120 Wn.2d 822, 828, 830, 845 P.2d 1017 (1993). A superior court abuses its discretion by ordering discretionary discovery without the defendant providing this factual basis. *See Blackwell*, 120 Wn.2d at 828, 830.

We hold that the superior court abused its discretion by granting Finch's request to order A.W. to take the disputed polygraph test because Finch did not provide some factual basis making it reasonably likely that the disputed polygraph test results would give rise to information material to the defense. We base our decision on three grounds.

First, the polygraph test results would be inadmissible in Finch's trial. Polygraph tests are inadmissible at trial unless both the State and the defendant stipulate to its admission, and the

State will not stipulate to the admission of the disputed polygraph test results here. *State v. Thomas*, 150 Wn.2d 821, 860, 83 P.3d 970 (2004).

Second, the charges against Finch would not be dismissed, even if A.W. were to fail the disputed polygraph test. Such a result would not move the State to dismiss the charges against Finch. Furthermore, such a result would not allow the superior court to dismiss the charges on Finch's motion because a disputed issue of material fact would remain as to the polygraph test's reliability. CrR 8.3 (stating that a superior court cannot dismiss a case on a defendant's motion unless there are no material disputed facts); *see Thomas*, 150 Wn.2d at 860-61 (stating that polygraph tests are unreliable).

Third, the polygraph test results would provide Finch with only highly unreliable information. Courts have consistently held polygraph tests to be unreliable. *In re Det. of Hawkins*, 169 Wn.2d 796, 803, 238 P.3d 1175 (2010); *Thomas*, 150 Wn.2d at 860-61. This unreliability is exacerbated when the polygraph test is administered to a sex crime victim. Lacey M. Sloan, *Revictimization by Polygraph: The Practice of Polygraphing Survivors of Sexual Assault*, 14 J. MED. & L. 255, 259 (1995). As explained in a recent article:

> The biggest problem with polygraph tests is that there are no known physiological responses that directly correspond with deception. An examinee's physiological responses are often governed by whether the examinee believes the test is accurate, and from the atmosphere created by the examiner. Furthermore, external stimuli may cause a change in physiological responses, such as a surprising question or a noise outside the room. Likewise, *stress, anxiety, and fear*, all controlled by the autonomic nervous system, cause changes in the physiological responses of an examinee.

Shelley Gupta, *A Polygraph Test Wouldn't Know the Truth if it Hit it with a Brick: Perpetuation of the Normalization of Violence Against Women*, 34 WOMEN'S RTS. L. REP. 282, 286-87 (2013) (emphasis added) (citing Leonard Saxe & Gershon Ben-Shakhar, *Admissibility of Polygraph Tests The Application of Scientific Standards Post-Daubert*, 5 PSYCHOL. PUB. POL'Y & L. 203,

211 (1999) and Leonard Saxe, *Detection of Deception: Polygraph and Integrity Tests*, 3 CURRENT DIRECTIONS IN PSYCHOL. SCI. 69, 70-71 (1994)).

The negative emotions that accompany being a sex crime victim, such as stress, anxiety, and fear, can further compromise the reliability of an already unreliable polygraph test by distorting the results and creating false positives. *See* Sloan, 14 J. MED. & L. at 259. Thus, the polygraph test of A.W., an alleged sex crime victim, would have highly unreliable results, and it is not reasonably likely that such unreliable information would give rise to information material to the defense.

We hold that Finch did not provide some factual basis making it reasonably likely that the disputed polygraph test would give rise to information material to the defense because the disputed polygraph test results would be inadmissible, would not lead to dismissal, and would be highly unreliable. Thus, the superior court abused its discretion under CrR 4.7 by granting Finch's discretionary discovery request to order A.W. to take the disputed polygraph test.[14]

III. APPEARANCE OF FAIRNESS

Finally, the State argues that we should remand this case to a different judge under the appearance of fairness doctrine. We agree.

A judicial proceeding satisfies the appearance of fairness doctrine if a reasonably prudent and disinterested person would conclude that all parties obtained a fair, impartial, and neutral hearing. *State v. Bilal*, 77 Wn. App. 720, 722, 893 P.2d 674 (1995). We analyze whether a judge's impartiality might reasonably be questioned under an objective test that assumes a

---

[14] CrR 4.7(e) allows the superior court to grant only *reasonable* discovery requests. Given polygraph tests' unreliability when given to sex crime victims, we cannot currently conceive how a defendant's request that the alleged sex crime victim take a polygraph test could ever be reasonable.

reasonable person to know and understand all relevant facts. *Sherman v. State*, 128 Wn.2d 164, 205-06, 905 P.2d 355 (1995). The party must produce sufficient evidence demonstrating actual or potential bias, such as personal or pecuniary interest on the part of the judge; mere speculation is not enough. *In re Pers. Restraint of Haynes*, 100 Wn. App. 366, 377 n.23, 996 P.2d 637 (2000).

Here, the judge apparently used his juvenile court authority over A.W.'s SSODA in *State v. A.W.* to order a polygraph test to investigate A.W.'s allegations in *State v. Finch*. If *State v. Finch* proceeds to trial, A.W. would have to appear to testify before this same judge who improperly allowed Finch to intervene in A.W's juvenile disposition, and who ordered A.W to take a polygraph test without proper authority. A reasonably prudent and disinterested person who knew these facts would conclude that the judge ordering A.W. to take a polygraph to investigate the criminal case in which A.W. is the victim, in spite of a therapist's testimony that polygraph tests could be harmful to A.W., could not give all parties a fair, impartial, and neutral hearing.

We hold that the judge's dual role as judge for A.W.'s juvenile disposition and Finch's criminal case, the judge's inability to separate these two roles, and the judge's attempts to investigate the truth of A.W.'s allegations in *State v. Finch*, combine such that a reasonably prudent and disinterested person who knew these facts would question whether the judge could act fairly in presiding over this case. Thus, we remand this case to a different judge to maintain the appearance of fairness.

No. 44637-5-II

We reverse the polygraph order because the superior court exceeded its authority by granting Finch's request to order A.W. to take the disputed polygraph test. We remand this case to a different judge. In light of this conclusion, it is unnecessary for us to consider the State's remaining arguments.

Worswick, C.J.

We concur:

Johanson, J.

Lee, J.

12