# FILE

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE SEP 0 4 2014

~madsen~ C. J.

CHIEF JUSTICE

This opinion was filed for record
at 4:30 pm on 9-4-2014

~Ronald R. Carpenter~
for Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | NO. 89881-2 |
| Petitioner, | EN BANC |
| v. | |
| JOSEPH T. McENROE and MICHELE KRISTEN ANDERSON, | Filed SEP 0 4 2014 |
| Respondents. | |

GORDON McCLOUD, J.—The State charged Joseph McEnroe and Michele Anderson with aggravated first degree murder and seeks a sentence of death for each of them. In January of this year, roughly five and a half years after the State filed its notices of intent to seek the death penalty, the trial court ruled that the absence of "'sufficient mitigating circumstances to merit leniency,'" RCW 10.95.060(4), is an essential element of the crime of capital murder in Washington and, hence, that the State must allege the absence of sufficient mitigating circumstances in the charging information. The trial court therefore gave the State two weeks to amend each charging information to allege insufficient mitigating circumstances. The order said

1

that if the State failed to amend the information, the court would entertain a defense motion to dismiss the State's notices of intent to seek the death penalty.

The State seeks reversal of that order. It also asks that the case be reassigned to a different trial judge on remand.

We reverse the trial court's order compelling the State to amend each information or face dismissal of the notice of special sentencing proceeding. We deny the State's motion for reassignment.

FACTS

In late December 2007, Joseph McEnroe and Michele Anderson (defendants) were charged with six counts of aggravated first degree murder. The State filed a notice of intent to seek the death penalty in each case.

Under Washington's death penalty statute, the State must file a notice of its intent to seek the death penalty (the "notice of special sentencing proceeding") "when there is reason to believe that there are not sufficient mitigating circumstances to merit leniency." RCW 10.95.040(2)(1). That notice must be filed within 30 days after arraignment unless the court grants an extension. RCW 10.95.040(2)(3). In this case, the trial court granted several extensions and the State did not file the notice until October 2008.

In November 2012, the defendants moved to dismiss the death penalty notices on the grounds that the prosecutor had violated their constitutional rights when, in

determining whether to seek the death penalty, he had considered the strength of the State's evidence. The trial court granted that motion, and the State sought interlocutory review by this court. The State also moved in the trial court to stay the order until five days after this court issued its decision on the motion for discretionary review. The trial court denied that motion, but the Supreme Court commissioner stayed the effect of the trial court's order pending review by this court. We ultimately granted review and reversed the trial court. *State v. McEnroe*, 179 Wn.2d 32, 309 P.3d 428 (2013).

On October 21, 2013, McEnroe moved the trial court to "preclude the possibility of a death sentence in this case" on the grounds that the State had failed to allege an essential element in the charging information. Clerk's Papers (CP) at 1-15. Anderson joined in McEnroe's motion. Under Washington's death penalty statute, the death penalty cannot be imposed for aggravated murder unless the jury is asked the following question: "'Having in mind the crime of which the defendant has been found guilty, are you convinced beyond a reasonable doubt that there are not sufficient mitigating circumstances to merit leniency?'" RCW 10.95.060(4). If the jury unanimously answers yes, then the penalty is death. *Id.*; RCW 10.95.030. If the jury does not unanimously answer yes, then the penalty is life without the possibility of parole. *Id.* According to the defendants, this makes the absence of "'sufficient mitigating circumstances to merit leniency'" an essential element of

3

capital murder in Washington and means that it must be charged in the information. RCW 10.95.060(4).

The defendants characterized their motion as "based on" the United States Supreme Court's recent decision in *Alleyne v. United States*, __ U.S. __, 133 S. Ct. 2151, 186 L. Ed. 2d 314 (2013), the latest in the line of cases beginning with *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). *Apprendi* held that for purposes of the Sixth Amendment right to a jury trial and the Fourteenth Amendment right to due process, the prosecution must prove to a jury, beyond a reasonable doubt, any fact necessary to increase the statutory maximum penalty for the charged crime. *Id.* at 492; U.S. CONST. amends. VI, XIV. The *Apprendi* decision held that a "'sentencing factor,'" such as an aggravating circumstance, becomes the "functional equivalent of an element" when it triggers the availability of a penalty greater than that authorized for the commission of the underlying crime. 530 U.S. at 494 n.19.

For many years the United States Supreme Court distinguished, for purposes of the *Apprendi* rule, between facts that increased the maximum potential sentence and facts that increased only the mandatory minimum sentence. *Harris v. United States*, 536 U.S. 545, 122 S. Ct. 2406, 153 L. Ed. 2d 524 (2002). But *Alleyne* rejected that distinction and held that for purposes of the *Apprendi* rule, there is no difference between facts that increase the statutory *maximum* and facts that increase the

mandatory *minimum*. 133 S. Ct. at 2160-63. The prosecution must prove both to the fact finder beyond a reasonable doubt. *Id.*

*Alleyne*'s holding on that point is irrelevant to this case. If the jury unanimously answers yes to the question in RCW 10.95.060(4), then the death penalty is both a statutory maximum and a statutory mandatory minimum—it is the only penalty that the trial court can impose.

But the defendants also argued that *Alleyne* expanded the definition of an "essential element," which this court has long required the State to allege in the charging information.[1] CP at 14 ("Alleyne . . . clearly . . . holds that necessary non-statutory elements are not to be distinguished from statutory elements.") The defense concluded that the absence of sufficient mitigating circumstances to merit leniency must now be considered an essential element and, hence, that it must now be charged in the information.

In response to the defendants' motion, the trial court embarked on an in-depth examination of the interaction between *Alleyne* and the relevant precedent from this court. On December 5, 2013, the trial court asked the parties to complete a form it called the Court's Requests for Admission. *Id.* at 276-77. This novel document consisted of seven questions with blanks indicating that the parties should supply

---

[1] *See, e.g., State v. Kjorsvik*, 117 Wn.2d 93, 97, 812 P.2d 86 (1991).

"'yes' or 'no'" answers. *Id.* The questions asked whether the "elements" of first degree murder and aggravated first degree murder are set forth in certain statutes; whether the penalties for those crimes are 240 months to life and life without parole, respectively; and whether, after a jury finds beyond a reasonable doubt that there are not sufficient mitigating circumstances to merit leniency, a court must impose a sentence of death on a defendant charged with aggravated first degree murder. *Id.*

The State objected to the Court's Requests for Admission. CP at 101. Instead of supplying yes-or-no answers to the court's questions, the State submitted a lengthy brief reframing those questions and arguing that the *Apprendi* rule does not apply to the ultimate decision in a death penalty case. The State argued that the decision to impose the death penalty is basically a moral, rather than a purely factual, determination and that the decision therefore falls outside the scope of the *Apprendi* rule. The trial court accepted the State's brief over the defendants' objection.

Then, on January 2, 2014, the trial court entered a written ruling directed to the defendants' "Motion Based on Alleyne." CP at 122-29. The ruling was not really an order; it did not "preclude the possibility of the death penalty" as the defendants had requested, nor did it impose any other relief. It just expressed agreement with the defendants' theory that "the absence of sufficient mitigation is an element of the crime for which death is the mandatory punishment." CP at 129. Both parties then filed additional motions: the State sought reconsideration of the

theory adopted by the court, and the defense sought to preclude the State from seeking death sentences.

On January 31, the court denied both parties' motions. CP 233-47. Critically, it also gave the State until February 17, 2014, to "amend the Information consistent with this Court's ruling" or relinquish the opportunity to pursue a special sentencing proceeding. CP at 246-47.

The State filed a motion for discretionary review of that January 31 order in this court and a motion to consolidate the defendants' cases for review. We granted both motions. *State v. McEnroe*, 179 Wn.2d 1022, 320 P.3d 719 (2014). Our commissioner granted the State's emergency motion for a stay of the trial court's orders pending further order of this court.

## ANALYSIS

I.       The trial court erred in ruling that the absence of sufficient mitigating circumstances to merit leniency must be alleged in the charging information

The trial court ruled, as a matter of law, that the absence of sufficient mitigating circumstances to merit leniency is an element of the crime and that the State must allege that element in the information in order to seek a sentence of death. We review such questions of law de novo. *State v. Womac*, 160 Wn.2d 643, 649, 160 P.3d 40 (2007).

7

As noted above, *Apprendi* holds that any fact, such as the existence of an aggravating circumstance that exposes the defendant to a sentence greater than the statutory maximum for the crime charged, is the "functional equivalent of an element" for right to jury trial and standard of proof purposes. 530 U.S. at 494 n.19. In *Alleyne*, the United States Supreme Court held that the *Apprendi* rule also applies to facts that raise the mandatory minimum sentence. 133 S. Ct. at 2160-63. Under both cases, such facts are the "functional equivalent[s]" of elements. *Apprendi*, 530 U.S. at 494 n.19. *Alleyne* also called such facts actual "elements," as opposed to "functional equivalent[s]," for purposes of the Sixth and Fourteenth Amendment questions at issue in that case. 133 S. Ct. at 2162 (omitting any reference to an element's "functional equivalent").

Based on this language, the defendants argue that in Washington, all "essential elements of a crime must be alleged in the information" and that post-*Alleyne*, these "essential elements" include the absence of sufficient mitigating circumstances to merit leniency in a capital case. Am. Resp't's Br. at 19, 27 (boldface and capitalization omitted).

The State disagrees with both arguments. First, it argues that the insufficient mitigation finding is not a factual determination subject to the *Apprendi* rule. The State points out that the jury can consider even nonfactual, moral issues, such as

mercy and leniency, in mitigation. This is certainly true under both state[2] and federal[3] law. The State also relies on federal cases interpreting the Federal Death Penalty Act (FDPA) of 1994, 18 U.S.C. § 3592(c); the State is correct that these cases all hold that the jury's decision to impose the death penalty under the FDPA is a "weighing" process rather than a factual determination, and is therefore not subject to the *Apprendi* line of cases or the reasonable doubt standard.[4] The defendants do not really respond to the first argument. They counter the second one by arguing that we cannot analogize Washington's death penalty statute to the FDPA: Washington's statute, unlike the FDPA, is not a "weighing" statute; the jury's insufficient mitigation decision is characterized as a sufficiency-of-evidence

---

[2] *In re Pers. Restraint of Yates*, 177 Wn.2d 1, 53-54, 296 P.3d 872 (2013) ("[T]he statutory question, fairly read, does not require a nexus between mitigating circumstances and the crime. The term 'mitigating circumstance' is broadly defined to include 'a fact about *either* the offense *or about the defendant* which in fairness or in mercy may be considered as extenuating or reducing the degree of moral culpability or which justifies a sentence of less than death, *although it does not justify or excuse the offense.*'").

[3] *Lockett v. Ohio*, 438 U.S. 586, 604, 98 S. Ct. 2954, 57 L. Ed. 2d 973 (1978) (plurality) (under Eighth and Fourteenth Amendments to the United States Constitution a jury must "not be precluded from considering, *as a mitigating factor*, any aspect of a defendant's character or record . . . that the defendant proffers as a basis for a sentence less than death").

[4] *E.g.*, *United States v. Gabrion*, 719 F.3d 511, 532-33 (6th Cir. 2013) (*Apprendi* and the reasonable doubt standard apply only to factual findings, not to the weighing of aggravators and mitigators), *cert. denied*, __ U.S. __, 134 S. Ct. 1934 (2014); *United States v. Fields*, 483 F.3d 313, 345-46 (5th Cir. 2007) (same).

determination (which is characteristic of factual questions);[5] and in Washington, the jury's insufficient mitigation finding is reviewed for sufficiency of the evidence (a standard also characteristic of factual questions).[6] Accordingly, they contend that in Washington, the jury's decision to impose the death penalty is treated like any other "fact" necessary to conviction.

Second, the State argues that even if "'not sufficient mitigating circumstances to merit leniency'" were a factual determination, the *Apprendi* rule deals with only the rights to trial by jury and proof beyond a reasonable doubt and not with the required contents of state charging documents. RCW 10.95.060(4). In support of this argument, the State relies primarily on *State v. Siers*, 174 Wn.2d 269, 274 P.3d 358 (2012). It asserts that under *Siers*, the due process clause guarantees a defendant notice of every "aggravating circumstance[]" (that is, every functional equivalent of

---

[5] *Compare* RCW 10.95.130(2)(a) ("With regard to the sentence review [in a death penalty case], the supreme court of Washington shall determine . . . [w]hether there was sufficient evidence to justify the affirmative finding to the question posed by RCW 10.95.060(4)."), *with* 18 U.S.C. § 3595(c)(2) (requiring reviewing court in FDPA case to consider three things: (1) whether the death sentence was imposed under the influence of passion, prejudice, or any other arbitrary factor; (2) whether the evidence supports the special finding of the existence of the required aggravating factor (but not the determination that aggravating factors outweigh mitigating factors); and (3) whether the proceedings involved any other legal error requiring reversal of the death sentence).

[6] *E.g.*, *State v. Stenson*, 132 Wn.2d 668, 757, 940 P.2d 1239 (1997) ("The test to review the sufficiency of the evidence [of insufficient mitigating circumstances to merit leniency in death penalty case] is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found sufficient evidence to justify that conclusion beyond a reasonable doubt.").

an element) alleged, but that such notice need not necessarily be given in the charging information itself. Reply Br. of Pet'r at 12-13. The defense counters that all elements must be alleged in the charging instrument itself under *Alleyne*.

The State certainly has the better of the charging instrument argument. Neither the Sixth nor the Fourteenth Amendment—the constitutional provisions at issue in *Apprendi* and *Alleyne*—requires the states to use any particular form of charging instrument. *See Apprendi*, 530 U.S. at 477 n.3. The Fifth Amendment to the United States Constitution's guaranty of indictment by grand jury is not binding on the states. *Id.* Hence, states can use their own charging procedures and documents (bounded, of course, by other constitutional guaranties, such as notice, which are not at issue here). The death penalty notices in the two cases before us complied with the state statutory charging requirements of RCW 10.95.040. Each notice alleged that "there [is] reason to believe that there are not sufficient mitigating circumstances to merit leniency."[7] RCW 10.95.040(2)(1). While the due process clause requires the states to give criminal defendants constitutionally adequate notice of "the essential elements of the crimes charged," *Siers* held that this notice need not necessarily be afforded in the charging information. 174 Wn.2d at 271, 275-77.

---

[7] In response to questions from this court at oral argument, the State filed a motion requesting to supplement the clerk's papers by designating the notice of special death penalty proceedings filed in each defendant's case. We grant that motion.

11

Neither party has argued that *Siers* should be overruled on this state law point. Thus, the State can provide such notice in the notice of special sentencing proceeding under RCW 10.95.040.

Because we hold that the notice of special sentencing proceeding afforded the defendants statutorily required notice that the State intended to prove the absence of sufficient mitigating circumstances to merit leniency, we do not reach the question of whether the insufficient mitigation finding is a factual determination for purposes of *Apprendi*. Under state law, it must already be presented to the jury and proved beyond a reasonable doubt. RCW 10.95.060(4), .080(1). On the other hand, under state law, the decision maker can consider mercy, leniency, and other nonfactual matters. We hold only that the notice of special sentencing proceeding satisfied all applicable constitutional and state charging requirements. The trial court therefore erred when it ordered the State to amend the information or relinquish the chance to have a special sentencing proceeding.

II.      The State's request for reassignment on remand is denied

For the first time on appeal, the State requested that these cases be reassigned to a different judge on remand. The State contends that reassignment is necessary to preserve the appearance of fairness and because "it can reasonably be expected that the trial court will have difficulty putting aside its strongly held views regarding its erroneous findings." Opening Br. of Pet'r at 41.

The State's motion is based on the trial judge's conduct of more than six years of pretrial proceedings, its treatment of numerous motions, its discretionary decisions on legal issues not currently before this court on their merits, and its views on several disputed, complex legal matters. Yet the State never asked Judge Ramsdell to recuse himself.

Generally, a party seeking a new judge files a motion for recusal in the trial court. *See, e.g., State v. Chamberlin,* 161 Wn.2d 30, 40-41, 162 P.3d 389 (2007). The recusal rule itself is based on the assumption that the challenged judge gets to evaluate the stated grounds for recusal in the first instance. CJC Canon 2.11(A) ("[a] judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned"). This recusal procedure allows the parties to develop a record adequate to determine whether "the judge's impartiality might reasonably be questioned." *Id.*

A party may sometimes seek reassignment for the first time on appeal, as the State did here. But that is generally done where the issue raised on appeal is also the basis for the reassignment request. Thus, reassignment may be sought for the first time on appeal where, for example, the trial judge will exercise discretion on remand regarding the very issue that triggered the appeal and has already been exposed to

13

prohibited information,[8] expressed an opinion as to the merits,[9] or otherwise prejudged the issue. This remedy has limited availability: even where a trial judge has expressed a strong opinion as to the matter appealed, reassignment is generally *not* available as an appellate remedy if the appellate court's decision effectively limits the trial court's discretion on remand.[10]

This case does not involve any exception to the rule that a motion to recuse is generally the proper way to seek a new trial judge. Of the State's seven asserted grounds for reassignment,[11] six are entirely unrelated to the *Alleyne/Apprendi* issue

---

[8] *State v. Harrison*, 148 Wn.2d 550, 559, 61 P.3d 1104 (2003); *In re Ellis*, 356 F.3d 1198, 1211 (9th Cir. 2004); *State v. Madry*, 8 Wn. App. 61, 70, 504 P.2d 1156 (1972).

[9] *State v. Sledge*, 133 Wn.2d 828, 846, 947 P.2d 1199 (1997); *United States v. Quach*, 302 F.3d 1096, 1103-04 (9th Cir. 2002); *State v. Aguilar-Rivera*, 83 Wn. App. 199, 203, 920 P.2d 623 (1996); *In re Custody of R.*, 88 Wn. App. 746, 763, 947 P.2d 745 (1997); *State v. Talley*, 83 Wn. App. 750, 763, 923 P.2d 721 (1996), *aff'd on other grounds*, 134 Wn.2d 176 (1998).

[10] *E.g.*, *United States v. Wolf Child*, 699 F.3d 1082, 1102-03 (9th Cir. 2012) (trial court's previously expressed view that defendant "categorically presented a danger to all children" not grounds for reassignment where appellate opinion "gives sufficient guidance that, should [the trial judge] determine it is necessary to impose new conditions [of supervised release] he will impose only suitably narrow conditions that will comply with the applicable legal requirements set forth above").

[11] The State asserted two of these grounds for reassignment for the first time in its reply brief. (We note that RAP 10.3(c) does not contemplate that parties will raise new arguments in a reply brief.) In response, the defendants filed a motion to supplement the designation of clerk's papers with four "documents relevant to refuting new allegations made by the State . . . regarding 'Reassignment Upon Remand,'" Mot. to Suppl. Resp'ts' Designation of Clerk's Papers at 1, and one document that was "overlooked in [the defendants'] original designation of clerk's papers (Sub. No. 587)," Resp'ts' Reply on Mot. to Suppl. Resp'ts' Designation of Clerk's Papers. The State filed a motion in opposition.

raised in this appeal[12] and none proves that Judge Ramsdell has prejudged the merits of this case or the propriety of any particular sentence.[13]

The one asserted ground for reassignment that does relate to the *Alleyne/Apprendi* issue appealed does not warrant reassignment. With respect to that asserted ground, the State argues that reassignment is warranted because, in ruling on the *Alleyne/Apprendi* issue, Judge Ramsdell "ignored binding precedent."

---

Because we hold that none of the State's allegations, even if true, is a proper basis for reassignment as an appellate remedy, we deny the defendants' motion to supplement the clerk's papers as to the four documents relevant to that issue. We grant the defendants' motion to supplement the clerk's papers as to the document that was overlooked (Sub. No. 587). We note that that document was appended to the State's motion for discretionary review, that it has therefore been before this court for several months, and that we have given it full consideration in this opinion.

[12] The State asserts the following six grounds for reassignment that are unrelated to the *Alleyne/Apprendi* issue: (1) Judge Ramsdell dismissed the notices of special sentencing proceeding in January 2013 for reasons ultimately rejected by this court; (2) after dismissing the notices of special sentencing proceeding in 2013, Judge Ramsdell refused to stay that order until five days after this court ruled on the State's motion for discretionary review; (3) Judge Ramsdell directed the parties to fill out the document titled "Request for Admissions"; (4) Judge Ramsdell cited Albert Camus when he opined that it was ironic that, if the strength of the State's evidence is relevant to the decision to seek the death penalty, a defendant who confesses is more likely to face that penalty; (5) that Judge Ramsdell unreasonably delayed the proceedings by allowing defendant Anderson's lawyers to withdraw early on; and (6) that Judge Ramsdell incorrectly interpreted King County Local General Rule 15. Opening Br. of Pet'r at 44-49.

[13] We acknowledge that the State believes Judge Ramsdell harbors a bias against the death penalty. But none of the State's allegations indicate that Judge Ramsdell's personal views—whatever they might be—led him to prejudge the merits of the State's case or the propriety of any sentence.

Opening Br. of Pet'r at 44. This argument fails for three reasons. First, legal errors alone do not warrant reassignment. *See Liteky v. United States*, 510 U.S. 540, 555, 114 S. Ct. 1147, 127 L. Ed. 2d 474 (1994) ("Almost invariably, [erroneous rulings] are proper grounds for appeal, not for recusal."). Second (and relatedly), our decision today leaves no discretion in the hands of the trial court as to the *Alleyne/Apprendi* issue appealed. Thus, as to that issue, there is simply no basis for the State's assertion that Judge Ramsdell will have trouble "putting aside [his] strongly held views." Opening Br. of Pet'r at 41. Even if Judge Ramsdell holds "strongly held views" about the contents of charging documents, he is bound on remand by this court's decision. *Id.*

Finally, the State's assertion that Judge Ramsdell "*ignored* binding precedent" on this issue is not correct. *Id.* at 44 (emphasis added). The binding precedent to which the State refers is *Siers*, 167 Wn.2d 269,[14] and, as this opinion makes clear, we agree with the State's interpretation of that case. But *Siers* arguably stands in tension with our earlier decision in *State v. Goodman*, upon which the trial court relied. *See* 150 Wn.2d 774, 784, 83 P.3d 410 (2004) ("A charging document is constitutionally sufficient under the sixth amendment to the United States Constitution and article I, section 22 of our constitution only if it includes all

---

[14] *See* Opening Br. of Pet'r at 38 (faulting trial court for declining to follow *Siers*, asserting that it did so "because it is a 5-4 decision").

'essential elements' of the crime, regardless of whether they are statutory or nonstatutory." (footnotes omitted)). Moreover, the State did not develop the theory that *Siers* was the dispositive case until it filed its motion for reconsideration in the trial court. Before it filed that motion, the State never treated *Siers* as controlling. Instead, it called the case "instructive," Verbatim Tr. of Proceedings (Dec. 18, 2013) at 26, and argued that it "reinforce[d] the State's position here," CP at 95.

This is understandable, given the evolution of our post-*Apprendi* opinions. We have yet to fully weave *Apprendi* into the fabric of our case law, and some of our cases distinguish in broad terms between "elements" and "sentence enhancers," *State v. Yates*, 161 Wn.2d 714, 757-58, 168 P.3d 359 (2007), or between "elements" and "'aggravation of penalty' factors," *State v. Kincaid*, 103 Wn.2d 304, 307, 692 P.2d 823 (1985). To the extent that these distinctions appear in cases addressing state charging documents, they are consistent with *Apprendi*'s result. But the reasoning underlying these distinctions derives from pre-*Apprendi* case law.[15] *Compare, e.g., Siers*, 174 Wn.2d at 282 (asserting, without qualification, that "an aggravating factor is not the functional equivalent of an essential element"), *with Alleyne*, 133 S. Ct. at 2155 ("[a]ny fact that, by law, increases the penalty for a crime

---

[15] In particular, it derives from the "essential elements" rule articulated in *Kjorsvik*, 117 Wn.2d at 97.

is an 'element' that must be submitted to the jury and found beyond a reasonable doubt").

The trial court's reading of these cases is not evidence of willful disregard of precedent. It may result in legal error, but an error of law is certainly not evidence of bias.

Thus, the general rule requiring parties to raise recusal issues in the trial court, rather than in this court, applies to most of the State's requests for reassignment. The remaining ground for seeking reassignment is a legal error, and a legal error alone does not warrant reassignment. We deny the State's request for reassignment on remand. We do so, however, without prejudice to the State's ability to file a motion for recusal in the trial court. That is the proper place to raise some of these highly fact-dependent claims in the first instance.

## CONCLUSION

We hold that the notice of special sentencing proceeding afforded the defendants constitutionally and statutorily adequate notice that the State intended to prove the absence of sufficient mitigating circumstances to merit leniency. The trial court's order directing the State to amend the charging information is therefore reversed. The State's request for reassignment on remand is denied without prejudice to the State's ability to bring a motion for recusal in the trial court.

18

_____
González McCloud, J.

WE CONCUR:

_____
Madsen, C.J.

_____
Stephens, J.

_____
Johnson, J.

_____
Wiggins, J.

_____
Owens, J.

_____
González, J.

_____
Fairhurst, J.

_____
Yu, J.