# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,

                Appellant,

      v.

YANIV LIVNAT,

                Respondent.

DIVISION ONE

No. 84630-2-I

UNPUBLISHED OPINION

DWYER, J. — Criminal Rule (CrR) 8.3(b) permits a trial court to dismiss a criminal prosecution due to "governmental misconduct when there has been prejudice to the rights of the accused which materially affect the accused's right to a fair trial." The behavior of a witness not employed by the State does not, by itself, constitute "governmental misconduct" within the ambit of this rule.

Here, the sole basis for the trial court's dismissal of the prosecution was the misconduct of a witness not employed by the State. Because dismissal was impermissible on this basis, we reverse the dismissal order and remand for further proceedings.

I

The State charged Yaniv Livnat with assault of a child in the second degree, residential burglary, assault in the fourth degree, malicious mischief in the third degree, and interfering with the reporting of domestic violence, for an incident that occurred on February 26, 2020 involving Livnat's 12-year-old son

S.L. at the home of Livnat's ex-wife Shalaine Fernandez.

The parties argued motions in limine on October 19, 2021. One of Livnat's motions in limine requested that the trial court exclude "evidence of other uncharged, alleged misconduct by [the] defendant."[1] The State agreed that the motion should be granted, but noted for the record:

> I do plan on eliciting testimony from Ms. Fernandez that Mr. Livnat was not allowed to the house or to come over to the house. But I don't plan on eliciting the reasons for that unless [defense counsel] wants to get into that. And that goes directly towards the elements of the burglary charge, Your Honor.

The trial court granted Livnat's motion. Thereafter, the State spoke to Fernandez for approximately 35 minutes and advised her of the court's rulings.

Trial commenced on October 25, 2021. The State's first witness was S.L. Following S.L.'s testimony, the State called Fernandez to the stand. Fernandez testified that on the day of the incident, Livnat was angry and threatening her. The prosecutor asked Fernandez whether there was something that led her to believe that Livnat was angry. Fernandez responded, "Just his -- the way he was saying it and what he was -- yeah. I know him. I haven't seen him that angry since -- he attacked me. So, yeah." Livnat immediately objected and moved to strike her response. The trial court struck the testimony and instructed the jury to ignore it. Fernandez then volunteered without a question being posed, "So I just know him. So, yeah, I was terrified at how angry he was."

The prosecutor next asked whether Livnat then left the scene. Fernandez

---

[1] The State repeatedly asserts that Livnat's motion in limine was to exclude evidence of his 2013 assault conviction. The record belies this assertion.

responded that he had. The prosecutor followed that question by asking

Fernandez whether she had called the police. Fernandez answered:

> That's kind of foggy because I don't know if I grabbed the phone. I was terrified because this is traumatic for me, and, like, PTSD for me. So I was shaking already, not knowing what happened. I don't know if I called the police or I told my friend "Call the police." I just couldn't think straight so I may have had somebody else call for me.

Livnat did not object.

During her direct examination, Fernandez frequently gave long narrative

answers to simple questions, often volunteering unsolicited information. At one

point, Fernandez again began testifying without any question having been asked.

After Livnat objected, the trial court admonished Fernandez:

> A. And I don't know what I said in between that time --
> [DEFENSE COUNSEL]: Your Honor, I'm to going object.
> THE WITNESS: -- but I was frustrated --
> [DEFENSE COUNSEL]: There's no question before the witness. She's just offering up --
> THE COURT: Yes. Please only answer --
> THE WITNESS: Don't offer more information? Okay.
> THE COURT: -- the question that's asked.
> THE WITNESS: Okay.
> THE COURT: I will strike the last statement.
> THE WITNESS: I'm a woman.
> [PROSECUTOR]: Pauses are okay.
> THE WITNESS: Yes.
> [PROSECUTOR]: If no one is talking, you don't have to fill in the space. Okay?
> THE WITNESS: Okay.

Livnat then began his cross-examination of Fernandez. After providing a

few straightforward answers, Fernandez returned to volunteering information that

was not responsive to the questions posed. For example, in response to a

question asking whether she had sent the text messages depicted in an exhibit,

3

Fernandez answered as follows:

> Yeah.  And I remember kind of like a cry out, to see maybe
> somebody can help, because I'm at my wit's end, which -- not
> meaning these things.  I wanted, kind of, Yaniv to -- having not
> anyone, you know, to talk me out of it, like, you're not making
> sense.  And that's exactly what he said here.  You're not making
> any sense right no[w].

After a few such narrative answers, Livnat's counsel admonished the witness: "I just need you to answer my questions, okay?  I need you to not introduce information.  That's not how it works. I ask questions and then . . . you answer them."  Fernandez attempted to speak over Livnat's counsel during this admonishment.  Immediately after being admonished, Fernandez again gave a long narrative answer to a yes or no question, volunteering information about her and Livnat's relationship.  Livnat objected and the court sustained the objection. The trial court once again directed her to only answer the question asked. Fernandez obeyed this directive for a short while, but soon began volunteering information again.

For instance, in response to a question about whether she knew Livnat intended to come to the house, Fernandez answered:

> I didn't know when he was coming.  I said if you want to speak to
> [S.L.] -- because, at the time, [S.L.] wasn't speaking to him at all for,
> like, two weeks because of how he had handled him. So –

Livnat objected and asked to address the trial court outside the presence of the jury.  Fernandez again attempted to talk over counsel.  Defense counsel had to yell "[s]top talking" in order to get Fernandez to stop.

Outside the presence of the jury, Livnat requested that the trial court strike Fernandez's testimony in its entirety and inform the jury to disregard her

4

testimony in its entirety. The trial court indicated that, "at a minimum, I am going to strike the testimony of Ms. Fernandez." The trial court further indicated that it would consider declaring a mistrial, but that it would need to do research overnight before making that decision. The trial court then adjourned for the day.

Trial resumed the following day. Before the jury was called to the courtroom, Livnat renewed his motion to strike Fernandez's testimony. Livnat indicated that he did not want a mistrial:

> What he's gone through to get to this point, both in expense and time away from his -- he hasn't been able to see his kid in 18 months. He's had supervised visits with his younger son that he pays for weekly to maintain contact with his son. So a mistrial would cause delay and cause significant hardship to my client and his ability to parent his kids. I do think there is a basis for the Court to dismiss the case outright under Criminal Rule 8.3, and that's any time that there's mismanagement, not by [the prosecutor], but by a State witness, that materially prejudices my client to get a fair determination of guilt or innocence.
>
> And so I think what we saw yesterday allows the Court to do that, and I think that's probably appropriate. I know a limiting instruction, some courts have said it's sufficient, but Your Honor saw what happened yesterday and the intentional way that I think this witness did that. So I do think there's a basis under that for dismissal.

Livnat indicated that if the trial court did not believe that there was a sufficient basis for dismissal, he still would not be requesting a mistrial and would prefer to take his chances with the jury.

The State opposed the motion. In arguing against dismissal, the prosecutor stated: "What the Court's remedy was, in this case, I think was appropriate in that it struck all of the testimony of Ms. Fernandez." The court

5

tabled the discussion until later in the day to permit the parties to conduct research on the standards for dismissal under CrR 8.3(b).

Trial then proceeded with the next four witnesses. The jury was instructed that the court had stricken Fernandez's testimony in its entirety, and the jurors were "directed to disregard it and should not consider it for any purpose."

After the day's witnesses had testified, when the trial court returned to discussion of Livnat's motion to dismiss, the State once again conceded that striking Fernandez's testimony was "appropriate and well thought out by Counsel and the Court." The State then argued that because the trial court had already stricken Fernandez's testimony, Livnat could not demonstrate any actual prejudice warranting dismissal. Specifically, the prosecutor stated:

> And I think that's a big distinction, wherein other cases where, you know, they may need to parse through what Ms. Fernandez said and can we consider that and can we not. And that really just invites prejudice or invites the jury to focus on things that maybe they shouldn't be. But here, it is blatant. It is clear to the jury; you can't consider one thing that Ms. Fernandez said. And I think that that remedy was appropriate to cure actual prejudice in this case.

The trial court determined that, while the State had not committed misconduct, Fernandez's conduct was deliberate and "[h]er conduct was such that yes, an attorney had to basically yell stop."

On October 27, 2021, the trial court entered an order pursuant to CrR 8.3(b), dismissing the case against Livnat. The trial court entered findings of fact and conclusions of law in conjunction with the order of dismissal. Therein, the trial court found:

6

> The intentional conduct of Ms. Fernandez could not be cured by instruction, and a mistrial is not the appropriate remedy. A mistrial would create substantial prejudice to the defendant in a subsequent criminal trial and in the corresponding family law case, impeding his Constitutional right to parent his children.

Finding of Fact 15.

The State appeals.

II

The State asserts that the trial court erred by striking Fernandez's testimony in its entirety because such a remedy was not warranted under the Sixth Amendment of the United States Constitution. We decline to address this issue, which is not properly before this court.

As an initial matter, we do not review arguments made for the first time on appeal. Wingert v. Yellow Freight Sys., Inc., 146 Wn.2d 841, 853, 50 P.3d 256 (2002). Neither the parties nor the trial court ever mentioned the Sixth Amendment or the right to confrontation when discussing the proper remedy for Fernandez's failure to obey court orders. Thus, the State's argument regarding the Sixth Amendment was not raised to the trial court. Accordingly, we will not review the argument.

Moreover, during the trial court proceedings, the State conceded on two separate occasions that striking Fernandez's testimony was an appropriate remedy. Indeed, the State's argument that Livnat did not suffer actual prejudice justifying dismissal was premised on the fact that the trial court had already stricken Fernandez's testimony in its entirety. Given this argument, we presume the State's concession was intentional. We therefore consider this issue waived.

7

III

The State next asserts that the trial court erred by granting Livnat's motion to dismiss pursuant to CrR 8.3(b). CrR 8.3(b) provides:

> The court, in the furtherance of justice, after notice and hearing, may dismiss any criminal prosecution due to arbitrary action or governmental misconduct when there has been prejudice to the rights of the accused which materially affect the accused's right to a fair trial.

In order to secure a dismissal pursuant to CrR 8.3(b), the defendant must establish by a preponderance of the evidence that arbitrary action or governmental misconduct resulted in actual prejudice affecting his right to a fair trial. State v. Martinez, 121 Wn. App. 21, 29-30, 86 P.3d 1210 (2004) (citing State v. Rohrich, 149 Wn.2d 647, 654, 658, 71 P.3d 638 (2003); State v. Wilson, 149 Wn.2d 1, 9, 65 P.3d 657 (2003)). Dismissal pursuant to CrR 8.3(b) is an extraordinary remedy and should be ordered only as a last resort. State v. Brooks, 149 Wn. App. 373, 384, 203 P.3d 397 (2009).

We review a trial court's decision on a CrR 8.3(b) motion for manifest abuse of discretion. State v. Moen, 150 Wn.2d 221, 226, 76 P.3d 721 (2003). "Discretion is abused when the trial court's decision is manifestly unreasonable, or is exercised on untenable grounds, or for untenable reasons." State v. Blackwell, 120 Wn.2d 822, 830, 845 P.2d 1017 (1993).

To the extent that our review requires us to analyze the trial court's interpretation of CrR 8.3(b), our review is de novo. State v. Jieta, 12 Wn. App. 2d 227, 230, 457 P.3d 1209 (2020). When interpreting a court rule, we look to the rule's plain language to determine its meaning. Jieta, 12 Wn. App. 2d at 230.

8

A

The trial court found that Fernandez intentionally and blatantly disregarded the trial court's orders, which led to defense counsel having to "yell" at the witness to stop her from volunteering inadmissible evidence.[2]  Had Livnat requested a mistrial, the trial court's findings might have supported a conclusion that Livnat's right to a fair trial was prejudiced.

However, Livnat did not move for a mistrial.  To the contrary, Livnat expressly stated, on several occasions, that he did not want the trial court to declare a mistrial.  Livnat's decision to forgo one remedy does not automatically entitle him to a greater one.  Accordingly, Livnat's decision to decline a mistrial has no bearing on whether dismissal was proper.

B

CrR 8.3(b) permits the trial court to dismiss a criminal prosecution "due to arbitrary action or governmental misconduct."  The State asserts that the trial court's conclusion that "[t]he prosecutor did not commit misconduct," precludes dismissal under CrR 8.3(b).  This is so, the State asserts, because the actions of a witness not employed by the State do not constitute "governmental misconduct."  We agree.

---

[2] The State asserts that the trial court's findings that Fernandez committed misconduct and that the misconduct was intentional were not supported by substantial evidence.  "A determination of whether certain actions constitute intentional misconduct is a finding of fact which will not be disturbed unless it is clearly erroneous."  State v. Cochran, 51 Wn. App. 116, 120, 751 P.2d 1194 (1988).  The trial court's findings of fact were clearly based on its assessment of the events that occurred during Fernandez's time on the witness stand.  Because the trial court is "in a better position to assess the credibility of witnesses, take evidence, and observe the demeanor of those testifying," State v. Hill, 123 Wn.2d 641, 646, 870 P.2d 313 (1994), we will not disturb the trial court's findings.

In its findings of fact and conclusions of law made in conjunction with its order of dismissal, the trial court entered the following pertinent conclusions:

> 3. Ms. Fernandez's intentional actions constitute governmental misconduct, as she was a State endorsed witness, called by the State.
> 4. The prosecutor did not commit misconduct.

Accordingly, the trial court's findings of fact and conclusions of law indicate that the only person who engaged in misconduct was Fernandez.

We have previously held that CrR 8.3(b) is unambiguous and that the plain meaning of the word "governmental" as used in the rule is "'of or relating to government or the government of a particular political unit.'" Jieta, 12 Wn. App. 2d at 232 (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 983 (2002)). A witness who is not employed by a state or local governmental agency cannot fall within this unambiguous definition.

Livnat does not identify any opinion approving a CrR 8.3(b) dismissal due to misconduct of a witness. When a party has failed to cite legal authority, we may presume none exists. P.E.L. v. Premera Blue Cross, ___ Wn. App. 2d ___, 520 P.3d 486, 493 (2022).

Livnat instead relies on State v. Taylor, 18 Wn. App. 2d 568, 490 P.3d 263 (2021), which concerned the trial court's denial of a motion for a mistrial after the State's expert witness violated the court's orders in limine several times. Voir dire of the expert witness revealed that the State had failed to instruct the witness of the trial court's orders that excluded references to the defendant's criminal history or request for an attorney. Taylor, 18 Wn. App. 2d at 576. We held that

10

"[w]here the need for the court to repeatedly instruct and attempt to cure is *created by one of the attorneys*, as was the case here, the overall fairness of the trial may be eroded such that those attempts become futile." Taylor, 18 Wn. App. 2d at 583 (emphasis added). Thus, a mistrial was appropriate not simply because the witness had violated the orders in limine several times, but because the State had not properly prepared the witness. Taylor, 18 Wn. App. 2d at 583. Taylor is inapplicable here, not only because it concerned a mistrial rather than a dismissal but also because the trial court in Livnat's case found no fault on the part of the State, while the court in Taylor did assign such fault to the State's lawyer.

We find State v. Wilson more on point. 149 Wn.2d 1. In both Wilson and the case consolidated with it, State v. Taylor, noted at 111 Wn. App. 1039 (2002) (unpublished), the trial courts had dismissed prosecutions pursuant to CrR 8.3(b) because the defendants were unable to interview a critical witness prior to the date of trial. Wilson, 149 Wn.2d at 6-8. In each case, the appellate court reversed the dismissal, holding that the defendants did not establish misconduct or fault on behalf of the government. Wilson, 149 Wn.2d at 6-8.

Our Supreme Court granted review in order to determine whether the trial courts abused their discretion in finding that the government engaged in misconduct by failing to produce a witness for a pretrial interview. Wilson, 149 Wn.2d at 8. The court held that the prosecutors in both cases had taken reasonable steps to secure interviews of the witness and, accordingly, had not committed misconduct. Wilson, 149 Wn.2d at 12. The court further held that the

11

trial courts should have considered alternative remedies before resorting to dismissal. Wilson, 149 Wn.2d at 12. As such, the court concluded, the trial courts in both cases had abused their discretion by dismissing the prosecutions. Wilson, 149 Wn.2d at 12.

Justice Sanders dissented from the court's decision. In Justice Sanders' view, the prosecution engaged in case mismanagement by violating the trial courts' orders to produce the witness and by not making their best efforts to ensure the witness's presence. Wilson, 149 Wn.2d at 14-15 (Sanders, J., dissenting). Justice Sanders concluded that the prosecutors' mismanagement of the cases satisfied the government misconduct requirement of CrR 8.3(b). He therefore would have held that neither trial court abused its discretion. Wilson, 149 Wn.2d at 16 (Sanders, J., dissenting).

Notably, neither the majority nor the dissent in Wilson assigned any significance to the misconduct of the witnesses. The sole consideration for both the majority and the dissent was whether there had been any misconduct on the part of the prosecutor's office, i.e., the government. Neither of the witnesses' conduct was imputed to the government on the basis that the prosecution intended to call them to testify at trial.

Here, the trial court concluded that the prosecutor had not committed misconduct. Neither party challenges that conclusion. The trial court's sole reason for concluding that governmental misconduct occurred was because Fernandez "was a State endorsed witness, called by the State." Conclusion of Law 3. This conclusion is inconsistent with the plain language of CrR 8.3.

12

Moreover, there is no authority in the case law permitting a court to impute a witness's conduct to the State merely because the State was the party who called the witness to testify. The trial court's conclusion that the prosecutor had not committed misconduct thus forecloses dismissal as a possibility pursuant to CrR 8.3(b). Accordingly, the trial court abused its discretion by dismissing the prosecution against Livnat.

C

Our analysis does not end there. If the constitutional prohibition on double jeopardy bars the State from retrying Livnat, then any error by the trial court in dismissing the prosecution would be harmless. Accordingly, we examine whether Livnat may be constitutionally retried upon remand.

Both the state and federal constitutions prohibit a criminal defendant from being placed twice in jeopardy. U.S. CONST. amend. V; CONST., art. I, § 9. Jeopardy attaches once a jury has been selected and sworn in. State v. Rich, 63 Wn. App. 743, 747, 821 P.2d 1269 (1992). However, a mistrial or improvidently granted dismissal will not necessarily bar retrial. Rich, 63 Wn. App. at 747. If the defendant requested or consented to the mistrial or improper dismissal, retrial is barred only if prosecutorial misconduct was intended to provoke a request for a mistrial. Oregon v. Kennedy, 456 U.S. 667, 676, 102 S. Ct. 2083, 72 L. Ed. 2d 416 (1982). If the defendant did not consent to the mistrial, retrial is barred unless discharging the jury was necessary in the interest of the proper administration of justice. State v. Connors, 59 Wn.2d 879, 883, 371 P.2d 541 (1962).

13

The distinction between the two standards does not hinge on whether the defendant consented to a mistrial specifically. Rather, "[t]he important consideration, for purposes of the Double Jeopardy Clause, is [whether] the defendant retain[s] primary control over the course to be followed." United States v. Dinitz, 424 U.S. 600, 609, 96 S. Ct. 1075, 47 L. Ed. 2d 267 (1976). Although Livnat did not consent to a mistrial specifically, he did request a dismissal, terminating the trial and forfeiting his right to have the case decided by the impaneled jury. Thus, we deem him to be in the same position as if he had consented to a mistrial for purposes of our double jeopardy analysis.

The Rich decision, on which Livnat relies, is inapposite. In that case, the State elected to try the defendant in absentia for taking a motor vehicle when the defendant did not appear on the morning of trial. Rich, 63 Wn. App. at 745. During trial, none of the witnesses could identify the defendant, who was not present, as the person driving the motor vehicle. Rich, 63 Wn. App. at 745. Both parties rested their cases and the trial court declared a recess for lunch. Rich, 63 Wn. App. at 745. The defendant arrived at the courthouse during the recess. Rich, 63 Wn. App. at 745-46. Defense counsel then moved for dismissal based on insufficient evidence. Rich, 63 Wn. App. at 746. The trial court denied the motion. Rich, 63 Wn. App. at 746. It then asked defense counsel to either permit the State to reopen its case or agree to a mistrial. Rich, 63 Wn. App. at 746. Defense counsel refused both options. Rich, 63 Wn. App. at 746.

Division Two of this court held that double jeopardy barred retrial of the defendant. Rich, 63 Wn. App. at 749. In so doing, the court concluded that the

14

defendant had not consented to a mistrial because he did not agree to either of the two unfavorable options presented to him by the trial court. Rich, 63 Wn. App. at 748. As such, the trial court applied the less stringent "proper administration of justice" standard when assessing whether retrial was barred by double jeopardy. There, the appellate court held, the mistrial had not been necessary in the proper administration of justice. Rather, the court held that it should be the State, not the defendant, who should bear the cost of its decision to proceed with trial in absentia. Rich, 63 Wn. App. at 748.

In the case just discussed, the course of proceedings was dictated by both the State (by proceeding in absentia) and the trial court (by insisting that the State get a second chance after the defendant appeared), rather than by the defendant. Here, however, Livnat was the party who had primary control over the course of the proceedings. Dismissal as a remedy for Fernandez's misconduct was first mentioned by Livnat, on the morning after the trial court had stricken Fernandez's testimony. Livnat had also been the party to request that Fernandez's testimony be stricken in its entirety. Rather than having a remedy imposed on him, Livnat was the party who requested all of the relief the trial court granted. Thus, Livnat is properly deemed to have consented.

The consequence of Livnat's consent is that, in order for retrial to be barred, Livnat is subject to a stricter standard than the one applicable in Rich. Specifically, for the double jeopardy bar to apply, Livnat must demonstrate that prosecutorial misconduct was intended to provoke a request for a mistrial. Kennedy, 456 U.S. at 676. This he cannot do, as the trial court concluded that

there was no prosecutorial misconduct whatsoever.

As under CrR 8.3(b), the conduct of a witness cannot be imputed to the State to satisfy the requirement of prosecutorial misconduct for purposes of a double jeopardy claim. This rule was established in State v. Hopson, 113 Wn.2d 273, 280-81, 778 P.2d 1014 (1989), in which our Supreme Court declined to hold that the conduct of a State's witness, who was not an officer of the court, could suffice to bar retrial of the defendant following a mistrial.

Because retrial is not barred by the constitutional prohibition on double jeopardy, the trial court's error in dismissing the prosecution was not harmless.

IV

The State next requests that we require that this matter be assigned to a different judge on remand. We decline to grant the State's request.

Reassignment to a new judge on remand may be appropriate if "the trial judge will exercise discretion on remand regarding the very issue that triggered the appeal and has already been exposed to prohibited information, expressed an opinion as to the merits, or otherwise prejudged the issue." State v. McEnroe, 181 Wn.2d 375, 387, 333 P.3d 402 (2014) (footnotes omitted). A party requesting reassignment on remand must demonstrate actual or potential bias of the judge who handled the initial proceeding. State v. Finch, 181 Wn. App. 387, 398-99, 326 P.3d 148 (2014) (citing In re Pers. Restraint of Haynes, 100 Wn. App. 366, 377 n.23, 996 P.2d 637 (2000)). The remedy is a limited one: "[E]ven where a trial judge has expressed a strong opinion as to the matter appealed, reassignment is generally *not* available as an appellate remedy if the appellate

16

court's decision effectively limits the trial court's discretion on remand." McEnroe, 181 Wn.2d at 387.

The State does not establish circumstances justifying a grant of its request. First, the State contends that the trial court made numerous factual findings concerning Fernandez's intent that are unsupported by the record. Having reviewed the record, we cannot say that any of the trial judge's factual findings, which were largely based on her observations of the witness's conduct, are clearly erroneous.

Second, the State argues that the trial judge stated that she planned to grant an acquittal after the State rested. The record reflects that the judge stated that she "was waiting for that halftime motion,"[3] i.e., that she anticipated that Livnat would be bringing such a motion after the State rested its case. This was a fair assumption under the circumstances. A reasonable person would not view the trial judge as having expressed an opinion on whether such a motion would necessarily have been granted.

Lastly, the State asserts that the trial judge "ignored binding precedent" by finding that Livnat was prejudiced in a manner that did not affect his ability to receive a fair trial. Br. of Appellant at 64. This argument fails because "legal errors alone do not warrant reassignment." McEnroe, 181 Wn.2d at 388 (citing

---

[3] [PROSECUTOR]: Your Honor, if I can ask for a little clarification too? It doesn't sound like this morning that the Court found that there was prejudice such that a mistrial was warranted, but it sounds like that changed. Am I incorrect?
THE COURT: Frankly, I was waiting for that halftime motion. I didn't think I needed to address it at that time. I could have, but I didn't.

Liteky v. United States, 510 U.S. 540, 555, 114 S. Ct. 1147, 127 L. Ed. 2d 474 (1994)).

Although the trial court will be exercising discretion on remand, it will not be doing so on the issue that gave rise to this appeal (whether Livnat satisfied the requirements under CrR 8.3(b) for dismissal). We thus deny the State's request to order reassignment of this matter on remand.

Reversed and remanded.

Dwyer, J.

WE CONCUR:

Coburn, J.