# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| RICK CYRUS SHORT, | No. 54994-8-II |
| Respondent, | |
| v. | |
| MAGGIE KAY SCHRADER, | PART PUBLISHED OPINION |
| Appellant. | |

GLASGOW, A.C.J.—Maggie Kay Schrader and Rick Cyrus Short are the parents of ES-S, who was born in 2016. A parenting plan entered when ES-S was 17 months old established that Schrader would be the primary residential parent.

When ES-S was three years old, Schrader sought to relocate with her son to Texas, and Short opposed relocation. Schrader's counsel failed to answer Short's requests for admission before the deadline in CR 36(a) because of extraordinary family circumstances. The trial court declined to accept Schrader's tardy answers because the court did not believe it had authority to do so. The trial court also concluded that the child relocation act, RCW 26.09.405-.560, factors weighed against allowing relocation. Schrader appeals.

In the published portion of this opinion, we hold that on remand, the trial court must exercise discretion under CR 36 as to whether to accept the late answers to the requests for admission. In the unpublished portion of this opinion, we resolve Schrader's challenges to the trial

court's application of the child relocation act factors. We reverse and remand for further proceedings consistent with this opinion.

FACTS

During discovery, Short's counsel took Schrader's deposition. Short's counsel then sent Schrader's counsel requests for admission, and answers were due May 22, 2020. Several of the requests asked for admissions regarding an accusation that Schrader had scratched Short's truck while others addressed whether Schrader would obtain a financial benefit from moving to Texas. Schrader wrote her answers and returned them to her attorney within four days of receiving the requests. Her counsel failed to submit answers until the day of trial in July, well after the 30-day deadline provided in CR 36(a). Short did not file a motion to compel answers to the requests for admission before trial.

Just prior to trial, Short's counsel argued that because Schrader had not answered the requests for admission by the 30-day deadline in CR 36(a), the requests for admission should be deemed admitted. Schrader's counsel explained that the failure to answer was entirely her fault and the reasons for her mistake. Counsel's mother was seriously ill and died around the time the answers were due, her law practice was complicated further due to COVID-19, and she had a new assistant who was still being trained at that time. Schrader's counsel also argued that the requests were duplicative because many of the requests were answered in Schrader's deposition. The entire deposition transcript was eventually admitted as substantive evidence.

The trial court invited the parties to submit briefs regarding whether the late answers to the requests for admission should be accepted or whether the requests should be deemed admitted. The trial court said expressly that it would be considering Schrader's counsel's "statements about

why they were not done," and explained that "the Court has discretion based on whether the Court finds . . . a satisfactory reason as to why they weren't provided." 1 Verbatim Report of Proceedings (VRP) at 30. In her brief to the trial court on this issue, Schrader's counsel argued again the reasons why she failed to provide Short with Schrader's answers to the requests for admission. She also argued that the requests were duplicative of testimony given in the deposition and "exceeded the permitted purpose of [a]dmissions." Clerk's Papers (CP) at 237. She further argued, "Failure to timely respond to the [r]equests for [a]dmissions is not dispositive to prove any legal conclusion for the [r]elocation action." CP at 238.

The trial court deemed admitted several requests for admission, but rejected others. In its oral ruling, the trial court explained that it was doing so because Schrader's counsel "didn't bring a motion to the Court on that issue," and the trial court did not believe it had authority to accept the late answers absent a motion. 3 VRP at 258. The trial court rejected some requests for admission because they addressed legal conclusions and were not proper. The requests for admission that were deemed admitted related to the allegation Schrader scratched Short's truck and the lack of financial benefit that Schrader and ES-S would enjoy if they moved to Texas.

ANALYSIS

LATE RESPONSES TO REQUESTS FOR ADMISSION

Schrader argues the trial court erred when it concluded that it did not have authority to accept her late answers to Short's requests for admission because she did not file a motion asking the court to do so. We agree.

CR 36(a) provides that requests for admission are admitted unless the responding party answers within 30 days "or within such shorter or longer time as the court may allow." Thus, the

3

rule plainly allows the trial court to extend the allowable time for answering. Moreover, the trial court can extend the time limit even after the 30-day deadline has expired. *Santos v. Dean*, 96 Wn. App. 849, 858-59, 982 P.2d 632 (1999). The trial court must consider whether permitting the extension improves the presentation of the case on its merits and "whether the extension will prejudice the opposing party." *Id.* at 859. The prejudice inquiry involves the difficulty a party may have in proving its case in light of the sudden need to prove facts that would otherwise have been deemed admitted under the rule. *Id.*

We review a trial court's rulings applying CR 36 for abuse of discretion. *See Peralta v. State*, 187 Wn.2d 888, 895, 389 P.3d 596 (2017). A trial court abuses its discretion when its decision is manifestly unreasonable or it is based on untenable grounds or untenable reasons. *State v. Dye*, 178 Wn.2d 541, 548, 309 P.3d 1192 (2013). A decision is based on an untenable reason if the trial court applied an incorrect legal standard "'or the facts do not meet the requirements of the correct standard.'" *Id.* (quoting *In re Marriage of Littlefield*, 133 Wn.2d 39, 47, 975 P.2d 1362 (1997)).

The trial court relied on a Fifth Circuit Court of Appeals case, *American Automobile Association v. AAA Legal Clinic of Jefferson Crooke, P.C.*, 930 F.2d 1117 (1991), to find that Schrader never made a motion to withdraw the admissions and it therefore did not have authority to accept the late answers. There is some support for this conclusion in CR 36(b), which provides that any matter admitted under the rule is conclusively established unless the court, "on a motion permits withdrawal or amendment of the admission." But this provision does not expressly address the trial court's discretion to extend the time limit for responding under CR 36(a). Nothing in CR 36(a) indicates that the trial court must receive a formal motion before extending the time limit.

Moreover, the trial court indicated in its pretrial discussion of this issue with counsel that it intended to consider Schrader's counsel's "statements about why [the answers] were not done," and explained that "the Court has discretion based on whether the Court finds . . . a satisfactory reason as to why they weren't provided." 1 VRP at 30. She asserted at the pretrial hearing that the failure to meet the CR 36(a) deadline was counsel's fault because she was experiencing family difficulties and staffing issues exacerbated by the pandemic. In light of the trial court's comments, it is understandable that Schrader's counsel would not believe she needed to bring a motion. In her brief to the trial court on this issue, Schrader's counsel argued again the reasons why she failed to provide Short with Schrader's answers to the requests for admission. Thus, it was clear that counsel was asking the trial court to permit the late submission of answers to the requests for admission.

The trial court declined to exercise the discretion granted to it under CR 36(a) because it believed it could not do so without a formal motion from Schrader. This misunderstanding of the legal constraints of its authority resulted in a failure to apply the correct legal standard. *See* CR 36(a). Moreover, Washington law requires judicial officers to make decisions under the child relocation act "based on the merits of the individual cases before them" whenever possible. RCW 26.09.003. It does not appear this preference for decisions on the merits was something the trial court considered. Failure to apply the correct legal standard was an abuse of discretion. On remand, the trial court must exercise its discretion under CR 36(a). In addition, lesser sanctions than deeming the requests admitted may be an alternative option.

CONCLUSION

Refusal to consider Schrader's late answers to the requests for admission based on a perceived lack of authority was an abuse of discretion in light of the discretion granted to the trial

court under CR 36(a), its statement to the attorneys that it planned to exercise that discretion, and the statutory preference for decisions on the merits in child relocation cases. On remand, the trial court must exercise its discretion under CR 36(a).

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Unpublished Opinion

Schrader also argues that the trial court failed to properly apply the factors required under the child relocation act. She asserts the trial court failed to apply the statutory presumption in favor of relocation, gave undue weight to the fifth factor, and found some facts that were not supported by substantial evidence. She also asks us to require that a new judge be assigned on remand. Both parties seek attorney fees on appeal.

We agree that the trial court improperly failed to apply the presumption in favor of relocation where factors were otherwise neutral and that the trial court improperly double counted the fifth factor addressing reasons for relocation and good faith. Substantial evidence does not support the finding about Schrader's deposition testimony or the trial court's finding that Schrader and ES-S would obtain no financial benefit from moving to Texas.

On remand, the trial court must also reweigh the child relocation act factors in light of our opinion on the existing record. We do not require assignment of a new judge. We decline to award attorney fees to either party on appeal.

ADDITIONAL FACTS

I. BACKGROUND

ES-S was born to Schrader in 2016. Short was later determined to be ES-S's father, and he started having contact with ES-S when the child was about seven months old. When ES-S was 17 months old, the trial court entered a parenting plan establishing Schrader as the primary residential parent. Short had residential time Wednesday nights and every other weekend. The parenting plan contained no limitations under RCW 26.09.191.

When ES-S was three years old, Schrader sought to relocate to Lago Vista, Texas, to be with her significant other, Juan Asencio, whom she intended to marry. Short objected to the relocation. Short believed Schrader was attempting to relocate in bad faith because there was often tension between them and he believed she was trying to interfere with his time with ES-S.

Three incidents played a prominent role at the relocation trial. First, when ES-S was three years old, Schrader told ES-S's pediatrician that he had begun having behavior problems. Schrader also reported that ES-S talked about a "'butthole' game" that he played with his father. Sealed Clerk's Papers at 3. The doctor recommended Schrader ask Short about it, but she did not. Schrader claimed that she does not recall being explicitly told to do so. Schrader also took ES-S to two therapy sessions. Either the therapist or the pediatrician alerted Child Protective Services (CPS), who then contacted Short. Schrader then claimed she was letting the professionals handle the situation, rather than going to Short and being accused of "start[ing] something." 1 VRP at 146. CPS investigated and concluded the allegations were unfounded.

Second, Short accused Schrader of scratching his truck with her keys after she argued with Short's girlfriend when she was picking up ES-S one morning. Schrader denied this and claimed

she did not even have her keys in her hand. The record contains three videos from Short's home security system with obstructed views of his truck. Schrader's car is running through the entire duration of the videos. As Schrader walked by the truck, it is clear that she gestured at the truck. But the view is obstructed, so it is unclear whether she scratched the truck. After finding out there was a video of the incident, Schrader admitted to gesturing at the truck but consistently denied scratching it. The videos were admitted as exhibits and the trial court considered them.

Finally, Short deposed Schrader prior to trial. At the deposition, Short's attorney asked Schrader, "Why *did* you initially consider [Asencio] moving up here [to Washington]?" Ex. 23, at 61 (emphasis added). Schrader responded that her interactions with Short were stressful, and moving Asencio to Washington would have been "a way to avoid conflict with [Short]." *Id.* In a brief to the trial court, Short's counsel acknowledged that this is what Schrader said in response to a question about "why she initially considered [Asencio] moving up to Washington." CP at 241.

## II. TRIAL TESTIMONY REGARDING THE RELOCATION FACTORS

Both Schrader and Short testified that they and their families had strong bonds with ES-S. Short's parents, girlfriend, and his girlfriend's mother all had strong relationships with ES-S, and ES-S spent time with them regularly. ES-S also had a friend who lived across the street from Short. ES-S similarly had strong bonds with Schrader's parents and family, including cousins, in Washington.

Schrader testified about her connections in Texas. Schrader went to college and lived in Texas for roughly six years, where she first met Asencio. They were romantically involved for several years before trial. She also had extended family and friends in Texas.

8

Both Short and Schrader testified regarding the quality of life the families would have in Washington and in Lago Vista. Short lived in a gated community near ES-S's paternal grandparents and good schools. At the time of trial, Schrader lived with her mother and stepfather. The quality of life and available activities in Lago Vista were similar to Washington. Schrader testified that the schools were similarly rated. Lago Vista had an A+ crime rating. Schrader believed the move would be an improvement for ES-S.

Schrader and Asencio testified about the financial impact of relocation. Schrader was living with her parents in Washington, it had not been easy for her to live on her own, and she did not anticipate being able to afford a home in Washington. Because Lago Vista was a growing community with more affordable properties, Schrader believed she would have more success in Texas. In the five years before trial, Schrader had worked three jobs, most recently as a realtor. As a realtor in Washington, Schrader grossed $50,000 in 2019 and $40,000 in the first four months of 2020. She had taken steps to get her license to be a realtor in Texas. Asencio made $120,000 as a police officer in Austin, Texas, which is near Lago Vista, and Schrader testified that Asencio might have to reattend police academy if he transferred to Seattle. Asencio believed he would not receive the same pay or benefits if he transferred to Washington. In Texas, Asencio and Schrader intended to buy properties for investment purposes, which Schrader could not afford to do alone in Washington.

During cross-examination, Short's attorney asked Schrader whether she had acknowledged "in the deposition that the reason [she] wanted to move to Texas was because [she] *didn't* get along with [Short]." 1 VRP at 143 (emphasis added). Schrader did not recall ever saying that. Short's

counsel moved to admit the deposition transcript, which the trial court granted. In her closing argument, Short's counsel stated that the following exchange occurred during the deposition:

> And a question was asked, "Why *didn't* you initially consider [Asencio] moving up here?" Her answer: "Because, honestly, when it comes to butting heads with [Short] . . . it's extremely difficult to work things out. It's very stressful. And it seems like it would've been just a way to avoid conflict."

2 VRP at 212 (emphasis added). This was a misquote of the deposition where counsel actually asked, "Why *did* you initially consider [Asencio] moving up here?" Ex. 23, at 61 (emphasis added).

In closing arguments, Schrader's attorney argued for relocation, addressing the statutory relocation factors. Schrader's counsel mentioned a neutral factor once, but she did so while also discussing the presumption in favor of relocation. Counsel stated that "[a]ll things being equal, with regard to the [age and development] factor, they're equal here as they are there. The assumption is my client gets to move. This is a neutral provision, neutral factor." 2 VRP at 239-40. This was Schrader's counsel's only mention of neutral factors in the closing argument.

### III. THE TRIAL COURT'S DECISION

Washington law requires the trial court to consider ten specific factors listed in RCW 26.09.520 when a parent seeks to relocate a child's primary residence or where the child resides with each parent for substantially equal time and another parent objects to the child's relocation.[1] RCW 26.09.410(2), .520. There is a rebuttable presumption in favor of relocation where the child lives primarily with the relocating parent. RCW 26.09.520. The presumption may be rebutted if the objecting party demonstrates "that the detrimental effect of the relocation outweighs the benefit of the change to the child and the relocating person," based on the statutory factors. *Id.*

---

[1] An eleventh factor must be addressed only when the trial court is entering a temporary order. RCW 26.09.520(11).

The first factor pertains to the "relative strength, nature, quality, extent of involvement, and stability of the child's relationship with each parent, siblings, and other significant persons in the child's life." RCW 26.09.520(1). The trial court found that both parties had a strong bond with the child. Both parents shared many activities with ES-S. ES-S was bonded with extended family of both parties in Washington, but it was unclear whether ES-S had relationships with any family in Texas. The trial court found that ES-S's bond with family in Washington was stronger than any bond with family in Texas. The trial court found this factor neutral.

The second factor considers any prior agreements made between the parties. RCW 26.09.520(2). This factor was not applicable because the parties did not make a prior agreement pertaining to relocation.

The third factor evaluates whether disruption of the child's contact with the relocating party would be more detrimental than disrupting contact with the objecting party. RCW 26.09.520(3). The trial court found that disrupting Schrader's time with ES-S would be slightly more detrimental than disrupting Short's time. Thus, this factor favored relocation.

The fourth factor addresses any residential limitations under RCW 26.09.191. RCW 26.09.520(4). This factor did not apply.

The fifth factor considers each parent's reasons for and good faith in seeking or opposing relocation. RCW 26.09.520(5). The trial court found that Schrader's request to relocate was not made in good faith. The trial court explained that Schrader had not adequately explained why Asencio could not move to Washington. Based on Schrader's deposition testimony, the trial court found that Schrader intended to relocate to decrease ES-S's residential time with Short and his girlfriend. The trial court found that Schrader lacked credibility and supported this finding by

referencing her testimony regarding the therapy sessions she took ES-S to and after viewing the video of her gesturing at Short's truck. In contrast, the trial court found Short's reasons for opposing relocation were made in good faith.

The trial court considered factor five as one factor in its oral ruling, finding that it did not favor relocation. But in the written order, the trial court split its findings into two sections for factor five, considering the relocating party's and the opposing party's motives separately and finding that Schrader's bad faith weighed against relocation and then finding that Short's good faith also weighed against relocation. All other factors were considered and recorded in the trial court's oral and written findings under one section each.

The sixth factor assesses the child's age, development stage, needs, and the impact of relocation. RCW 26.09.520(6). The trial court found no significant difference for ES-S's development living in either Washington or Texas. Thus, this factor was neutral.

The seventh factor compares the "quality of life, resources, and opportunities" to the child in the "current and proposed" locations. RCW 26.09.520(7). The trial court compared evidence regarding both Washington and Texas to determine that quality of life, resources, and opportunities are similar in both places and, thus, factor seven was neutral.

The eighth factor concerns the "availability of alternative arrangements to foster and continue the child's relationship" with the nonrelocating parent. RCW 26.09.520(8). The trial court determined that this factor was neutral but gave no reasoning.

The ninth factor considers "alternatives to relocation and whether it is feasible and desirable" for the objecting party to also relocate. RCW 26.09.520(9). The trial court found that

Schrader could be successful in either location and that it would be difficult for Short to relocate until he retired from the military. The trial court found that this factor was neutral.

The tenth factor considers the financial impact of the relocation or its prevention. RCW 26.09.520(10). The trial court found that Schrader had presented no evidence that she and ES-S would be substantially better off financially if they relocated to Texas. The trial court found this factor neutral.

The trial court then found that Short overcame the presumption in favor of relocation and the detrimental effect of relocation would outweigh the benefits for ES-S and Schrader. The trial court reiterated that relocation would not benefit Schrader's career or financial situation. While it would benefit Schrader to be with Asencio, Schrader had not presented evidence that Asencio could not move to Washington. The trial court then emphasized the significant relationships ES-S had with Short and ES-S's extended family on both sides in Washington versus the lack of evidence of significant relationships with family in Texas. Thus, the trial court found that there would be significant detriment to ES-S if he left the only place he has ever lived. The trial court said that none of the admissions influenced its holdings, it had relied on the evidence presented at trial, and the admissions only corroborated its decision.

## ANALYSIS

### I. RELOCATION DECISION

The Washington Legislature adopted the child relocation act, RCW 26.09.405-.560, in 2000, shifting the analysis from the child's best interest alone to considering the relocating person's interests as well. *In re Marriage of Kim*, 179 Wn. App. 232, 240, 317 P.3d 555 (2014). The act requires the trial court to consider 11 factors to "determine whether the detrimental effect

of the proposed relocation outweighs its benefits." *Id*. The factors are equally important, they are not weighted or listed in a particular order, and they "provide a balancing test between the competing interests and circumstances that exist when a parent wishes to relocate." *In re Marriage of McNaught*, 189 Wn. App. 545, 556, 359 P.3d 811 (2015). The trial court "must make findings on the record regarding each of the factors." *Kim*, 179 Wn. App. at 241.

The act also creates a rebuttable presumption in favor of relocation when the primary residential parent requests relocation. RCW 26.09.520. The presumption may be rebutted if the objecting party demonstrates that the detrimental effect of the relocation outweighs the benefits of relocation to the child and the relocating party, based on the factors. *Id.* The presumption "gives substantial weight to the traditional assumption that a fit parent acts in [their] child's best interests," including when a parent decides to relocate. *McNaught*, 189 Wn. App. at 553. A parent opposing relocation must rebut the presumption by a preponderance of the evidence. *Id.* at 553-54. The burden of production and the burden of persuasion are on the party opposing relocation. *Id.* at 554. The presumption presents a "significant yet surmountable hurdle" that effectuates the legislature's policy choice to favor relocation with a primary residential parent. *Id.* at 555.

We review the trial court's decision regarding relocation for abuse of discretion. *Kim*, 179 Wn. App. at 240. A trial court abuses its discretion when it "applies an incorrect standard, the record does not support the court's findings, or the facts do not meet the requirements of the correct standard." *Id.* When reviewing a relocation decision, we consider whether the trial court's findings are supported by substantial evidence "and whether they, in turn, reflect consideration of the appropriate factors." *Id.* at 244. "We do not reweigh the evidence." *Id.*

A.      Legal Error: Presumption in Favor of Relocation and Neutral Factors

Schrader argues that all of the neutral factors should have been weighed in favor of relocation because of the statutory presumption. Short argues that the trial court acted within its discretion, applying the presumption when considering each factor, and that each of the neutral factors did not favor relocation but were considered to be neutral *after* the presumption was applied. We agree with Schrader because the trial court did not expressly say that it found some factors to be neutral *after* applying the presumption.

We recently held that properly applying the presumption in favor of relocation meant that "a neutral factor would still have the effect of supporting relocation." *Shrauner v. Olsen*, 16 Wn. App. 2d 384, 407, 483 P.3d 815 (2020). A trial court *could* expressly conclude that a factor tips against relocation but when the presumption is applied, the factor becomes neutral. But there is no suggestion in the trial court's written and oral findings that this is what occurred here. Instead, the trial court flatly concluded that factors six through ten were neutral. The trial court did not mention the presumption in its discussion of the individual factors. Thus, at the very least, we cannot tell whether the trial court appropriately applied the presumption under *Shrauner*.[2]

Although the trial court said that it applied the presumption when it ultimately weighed all of the factors after addressing them each individually, the trial court did not explain how the single factor that weighed against relocation, factor five, overcame the single factor that weighed in favor

---

[2] Short also argues that Schrader invited the trial court's incorrect weighing of neutral factors by stating in closing that one factor should be treated as neutral. But Schrader's counsel did not suggest in closing that the factor she said was neutral was not then subject to the presumption. Nor did she suggest that the multiple factors that the trial court ultimately found to be neutral should not be subject to the presumption.

of relocation, factor three, in light of the statutory presumption in favor of relocation and the burden on Short of both production and persuasion to show relocation would be detrimental. The trial court appears to have misapplied the burden by failing to treat neutral factors as weighing in favor of relocation either individually or in its final balancing. This was an erroneous application of the law that requires remand. *Kim*, 179 Wn. App. at 240. If the trial court intended to say that some factors were neutral *after* application of the presumption, it can say so expressly on remand.

B.      Legal Error: Weighing Factor Five Twice

The fifth factor addresses the reasons that the relocating party and the opposing party gave for seeking or opposing relocation and whether their reasons show good faith. Schrader argues in part that the trial court's legal analysis was flawed because it appeared to give extra weight to the fifth factor by essentially counting it twice. The proper legal analysis would consider both parties' reasons as one factor.

The relocation factors are "not weighted." RCW 26.09.520. "Each factor has equal importance." *McNaught*, 189 Wn. App. at 556. While factor five considers both the relocating parent's and the objecting parent's motivations, both should be considered together and be weighed as one factor. *See id* at 558-59 (considering both parents' reasons for and objections to relocation together in analysis of factor five); *Shrauner*, 16 Wn. App. 2d 413 (weighing factor five the same as all other factors); *In re Marriage of Rostrom*, 184 Wn. App. 744, 752, 339 P.3d 185 (2014) (stating that all of the RCW 26.09.520 factors have equal importance).

The trial court considered factor five as a single factor in its oral ruling. But the trial court split its discussion of factor five into two sections in the written order—"Reasons for moving" and "Reasons for objecting." CP at 248. The trial court found that Schrader's reasons were given in

bad faith because it believed she was really trying to reduce ES-S's residential time with Short and his girlfriend. It then found Short's reasons for objecting were given in good faith. In its written order, the trial court found each of these weighed against relocation, effectively counting factor five twice. All other factors were considered and recorded in the trial court's oral and written findings under one section each. This was problematic because only two factors were both applicable and nonneutral, factor three and factor five, and they weighed in opposite directions. Thus, counting factor five twice prejudiced Schrader.

To the extent the trial court addressed the parties' motives in a way that improperly counted factor five twice, that was an abuse of discretion because the factors should have been equally weighted as a matter of law. *McNaught*, 189 Wn. App. at 556. On remand, the trial court must consider the parties' motives as a single factor that carries weight equal to the other factors.

C.      Evidence to Support the Trial Court's Findings and Other Balancing Arguments

Schrader also argues that the trial court abused its discretion in entering its findings for factors one, five, and ten, as well as several findings reiterated in the trial court's final paragraph balancing the factors. Schrader claims that the trial court improperly placed the burden of persuasion on the relocating parent. Short counters that the trial court carefully considered all relocation factors and fundamentally understood the child relocation act.

When considering the relevant factors, we review the "trial court's factual findings to determine whether they are supported by substantial evidence." *Shrauner*, 16 Wn. App. 2d. at 402. Substantial evidence is "'of a sufficient quantity to persuade a fair-minded, rational person of the truth of the declared premise.'" *Kim*, 179 Wn. App. at 244 (quoting *In re Marriage of Fahey*, 164 Wn. App. 42, 55, 262 P.3d 128 (2011)).

We will not "reweigh the evidence or disturb a trial court's determination regarding the credibility of witnesses." *Shrauner*, 16 Wn. App. 2d. at 402. This "court may not substitute its findings for those of the trial court where there is ample evidence in the record to support the trial court's determination." *In re Marriage of Kovacs*, 121 Wn.2d 795, 810, 854 P.2d 629 (1993).

However, we have reversed where a trial court has considered facts irrelevant to a particular factor or failed to consider relevant facts necessary for applying a factor. For example, in *Shrauner*, we held that the trial court improperly evaluated factor five, the parties' reasons for seeking and opposing relocation, when it discredited the mother's assertion that she wanted to move to be with her new partner and to start a business venture with him that she believed would improve her family's living conditions. 16 Wn. App. 2d. at 410-13. The trial court in that case discounted the mother's conclusion that the family would financially benefit from the move, as well as the noneconomic benefits to the family, like living a more rural and secluded lifestyle consistent with the mother's values. *Id.* at 411-12. The trial court also improperly considered the fact that the mother had not yet legally married her partner and indications the mother would move even if she were not allowed to relocate the child, a factor that could not be considered under the relocation statute. *Id.* at 413-14. We held that the trial court erred in weighing factor five against relocation because it improperly disregarded the mother's interests in moving, considered evidence that was irrelevant to factor five as a matter of law, and relied on evidence it was not permitted to consider under the relocation statute. *Id.* at 412. Thus, in application, improper consideration of irrelevant facts or refusal to consider relevant facts can lead to reversal of a trial court's ultimate finding relating to a relocation factor.

18

1.      Factor one

The first factor considers ES-S's bond with the parties and his other significant relationships. Schrader argues that the first factor should have been found in favor of relocation because this factor favors "maintaining the continuity" of the child residing with the primary residential parent. Opening Br. of Appellant at 29.

Under RCW 26.09.520(1), the trial court must consider the relative strength and nature of the child's relationships with each parent and other significant people in the child's life. The trial court found this factor to be neutral because ES-S had strong stable bonds with both his parents, with Short's girlfriend, and with both parents' extended families in Washington. The trial court also found that it was not clear that ES-S had strong relationships with Schrader's boyfriend or with her relatives in Texas. In its final paragraph balancing the factors, the trial court reiterated that there was no evidence Schrader or ES-S had strong relationships with relatives in Texas, while ES-S had strong bonds with family in Washington.

While there was a factual dispute as to whether there was evidence of strong relationships with Asencio and other people in Texas, the trial court's findings are supported by substantial evidence in the record. Neither party contests the strength of ES-S's relationship with the other parent. And all parties acknowledged ES-S had strong relationships with extended family and friends in Washington. Although Schrader takes issue with the trial court's finding that it was unclear whether ES-S also had strong relationships with her boyfriend and her Texas relatives, this finding is supported by evidence in the record. While Asencio had visited with ES-S a few times during his relationship with Schrader, it is not surprising that the trial court would doubt that ES-

S's relationship with Asencio would be as strong as with people ES-S had known his whole life. This is also true of Schrader's Texas relatives who had not spent much, if any, time with ES-S.

There is substantial evidence in the record to support the trial court's findings related to factor one. The trial court ultimately found that this factor was neutral, however. As discussed above, on remand, the trial court should expressly state how it applies the presumption in favor of relocation to this neutral factor.

### 2. Factor five

In addition to her legal argument that the trial court double counted this factor, Schrader argues that the trial court relied on "irrelevant facts, ignore[d] uncontroverted relevant evidence, [and] shift[ed] the burden of production and persuasion" when it found she was acting in bad faith and Short was acting in good faith under factor five. *Id.* at 30.

When considering the reasons given for and against relocation, the trial court discussed several underlying facts. The trial court found that Schrader had presented no evidence to support her allegation that Asencio could not successfully move to Washington. In the final paragraph balancing the factors, the trial court remarked again that Asencio could move to Washington. The trial court also found that Schrader's deposition testimony indicated that the motives for the relocation were actually to reduce ES-S's residential time with Short and his girlfriend. The trial court then expressed doubt as to Schrader's credibility based on her testimony about ES-S's therapy sessions and the incident where she allegedly scratched or gestured toward Short's truck. The trial court found that these incidents were evidence of Schrader's attempts to "micromanage" Short's residential time and the time ES-S spent with Short's girlfriend. CP at 248.

It appears the trial court misunderstood Schrader's deposition testimony. Schrader testified in her deposition that she and Asencio considered him moving to Washington in order to avoid conflict with Short over relocation. But both Short's counsel and the trial court appear to have misread this testimony, concluding instead that Schrader testified she sought to move to avoid conflict with Short and his girlfriend. But this is not what Schrader said. This finding is not supported by the record.

Nevertheless, the remaining findings under factor five are supported by substantial evidence in the record. The trial court's evaluation of Schrader's credibility related to the alleged damage to Short's truck and the therapy sessions cannot be revisited on appeal. Schrader testified that Asencio might have to reattend police academy if he transferred to Washington and Asencio testified that he received better pay and benefits in Austin, so there was some evidence in the record about why they decided Asencio should not move to Washington. But the trial court, in context, was remarking on the lack of documentation or evidence supporting their opinions about the viability of Asencio relocating to Washington. We do not reweigh the evidence and Schrader has not established that the trial court considered irrelevant evidence or facts that could not be considered under the relocation statute at this stage. The trial court did not err when it concluded that there was a lack of evidence supporting the conclusion that Asencio could not relocate to Washington.

The incorrect finding regarding Schrader's deposition testimony must be corrected on remand. The trial court must also revisit its finding that Schrader acted in bad faith when seeking relocation in light of that change. And as discussed above, the trial court appears to have counted factor five twice and this legal error must also be corrected on remand.

21

3.    Factor ten

The tenth factor pertains to the financial impact of relocation. RCW 26.09.520(10). Schrader argues that the trial court made unsupported findings that relocation to Texas would not benefit Schrader financially, ignoring uncontested evidence to the contrary.

In *Shrauner*, we held that the trial court improperly discounted the anticipated benefits to the family of the proposed move because relocation would result in better housing and would allow the mother to engage in a business venture with her new romantic partner. 16 Wn. App. 2d at 412. The mother was not required to conclusively prove that the business venture would be successful because there were other significant benefits to the move including an ownership interest in the business and a rural lifestyle that the mother highly valued. *Id*.

Here, both Schrader and Asencio testified that the point of the relocation was to build a home in an area with significantly cheaper housing market so Schrader and Asencio could start a family together with ES-S in Texas. In Washington, Schrader lived with her parents and could not afford her own home. In Texas, she would be able to continue her work as a real estate agent and own a home with Asencio in an area with a reasonable cost of living. Additionally, they intended to purchase investment properties. In contrast, home ownership for Schrader in Washington was not a realistic possibility. Although Short contested the difference in cost of living between Tacoma and Lago Vista, he did not contest Schrader and Asencio's ability to purchase a home together in Texas, or their investment plans. He also does not contest that one of the benefits of the move would be a more rural lifestyle, which Schrader valued.

Like in *Shrauner*, the trial court improperly ignored that relocation would be a financial benefit to Schrader and ES-S because it would allow her to move out of her parents' house,

purchase a home with Asencio, and engage in real estate investment in Texas. We conclude that the trial court's findings supporting factor ten were not supported by the record and that it must revisit this factor on remand.

## II. REQUEST FOR A NEW JUDGE ON REMAND

Schrader requests assignment to a new trial judge if the case is remanded. While this appeal is not meritless, a new judge is unnecessary because remand instructions can effectively limit the trial court's discretion. And there is no indication that the trial court has prejudged the issues such that it cannot fairly decide the case on remand.

"[R]eassignment may be sought . . . where, for example, the trial judge will exercise discretion on remand regarding the very issue that triggered the appeal, and has already been exposed to prohibited information, expressed an opinion as to the merits, or otherwise prejudged the issue." *State v. McEnroe*, 181 Wn.2d 375, 387, 333 P.3d 402 (2014) (footnotes omitted). However, the remedy is limited, and "reassignment is generally *not* available as an appellate remedy if the appellate court's decision effectively limits the trial court's discretion on remand." *Id*.

We conclude that the trial court has not prejudged the issue in a way that creates undue harm for either party. On remand the trial court must apply the presumption in favor of relocation consistent with *Shrauner* when addressing neutral factors, it must not double count factor five, and it must reevaluate factors five and ten with appropriate consideration of the facts supported by the record. It must also exercise its discretion under CR 36. The record does not reflect any reason to be concerned that the trial court could not apply these remand instructions.

### III. ATTORNEY FEES ON APPEAL

Both Schrader and Short request attorney fees on appeal. We have the discretion to award attorney fees in cases brought under chapter 26.09 RCW based on consideration of the parties' financial resources. RCW 26.09.140; RAP 18.1(a). The submitted affidavits reflect that the parties have similar net incomes although their expenses are disparate. Nevertheless, neither seems to have resources available to pay the other party's attorney fees. Balancing the parties' need and ability to pay, we decline to award attorney fees to either party on appeal.

### CONCLUSION

We conclude that the trial court improperly failed to apply the presumption in favor of relocation where factors were neutral, and the trial court improperly double counted the fifth factor addressing reasons for relocation. Substantial evidence does not support the trial court's finding about Schrader's deposition testimony or the trial court's finding that Schrader and ES-S would obtain no financial benefit from moving to Texas. We therefore reverse and remand.

On remand, the trial court must reweigh the child relocation act factors in light of our opinion on the existing record. We decline to require assignment of a new judge, and we decline to award attorney fees on appeal to either party.

Glasgow, A.C.J.

We concur:

Worswick, J.

Price, J.